**No. 25-4014**

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

---

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; *et al.*,
*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*; *et al.*,
*Defendants-Appellants.*

---

On Appeal from the United States District Court for the Northern District of California

---

**REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL**

---

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MELISSA N. PATTERSON
JOSHUA M. KOPPEL
TYLER J. BECKER
*Attorneys*
*Civil Division, Room 3632*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4052*

## TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. THE GOVERNMENT IS LIKELY TO PREVAIL ON THE MERITS. ..... 1

A. Plaintiffs Cannot Evade The FSLMRS's Statutory Review Scheme. ..... 1

B. Plaintiffs Cannot Rehabilitate The District Court's Flawed And Incomplete First Amendment Analysis. ..... 6

II. THE EQUITABLE FACTORS FAVOR A STAY. ..... 10

CONCLUSION ..... 13

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*AFGE Loc. 446 v. Nicholson*,
475 F.3d 341 (D.C. Cir. 2007) ........ 2, 3

*AFGE Loc. 2118 & Dep't of Energy, Albuquerque Operations, Los Alamos Area Off.*,
2 F.L.R.A. 916 (1980) ........ 3

*AFGE v. Loy*,
367 F.3d 932 (D.C. Cir. 2004) ........ 2, 3, 5

*AFGE v. Reagan*,
870 F.2d 723 (D.C. Cir. 1989) ........ 7

*AFGE v. Trump*,
929 F.3d 748 (D.C. Cir. 2019) ........ 1, 5

*AFGE v. Trump*,
139 F.4th 1020 (9th Cir. 2025) ........ 6

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) ........ 4, 6

*Board of Cnty. Comm'rs v. Umbehr*,
518 U.S. 668 (1996) ........ 10

*Boquist v. Courtney*,
32 F.4th 764 (9th Cir. 2022) ........ 9

*Department of Energy, Oak Ridge Operations & NAGE Loc. R5-181*,
4 F.L.R.A. 644 (1980) ........ 5

*Elgin v. Department of Treasury*,
567 U.S. 1 (2012) ........ 3, 6

*Nieves v. Bartlett*,
587 U.S. 391 (2019) ........ 8

*NTEU v. Trump*,
No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) ........ 4, 11, 12

*Reichle v. Howards*,
566 U.S. 658 (2012) ........ 8

*Small v. Avanti Health Sys., LLC*,
661 F.3d 1180 (9th Cir. 2011) .......... 11

*Trump v. AFGE*,
606 U.S. ___, 2025 WL 1873449 (July 8, 2025) .......... 6

*Trump v. Hawaii*,
585 U.S. 667 (2018) .......... 7, 9, 10

*Trump v. International Refugee Assistance Project*,
582 U.S. 571 (2017) .......... 10

*U.S. Dep't of Health & Hum. Servs. & Laborers Int'l Union Loc. 1376*,
60 F.L.R.A. 202 (2004) .......... 6

*U.S. Dep't of Homeland Sec. & AFGE*,
59 F.L.R.A. 423 (2003) .......... 5

*Webster v. Doe*,
486 U.S. 592 (1988) .......... 7

**Statutes:**

Federal Service Labor-Management Relations Statute:
5 U.S.C. § 7103(b)(1) .......... 1, 2, 3, 5, 7, 8
5 U.S.C. § 7105(a)(2)(I) .......... 2
5 U.S.C. § 7112(b)(6) .......... 5
5 U.S.C. § 7116(a) .......... 2
5 U.S.C. § 7118 .......... 2
5 U.S.C. § 7121 .......... 2
5 U.S.C. § 7123(a) .......... 2, 3

38 U.S.C. § 7422(d) .......... 2

**Other Authorities:**

*Switch to AFGE E-Dues Now Before It's Too Late*, AFGE (June 2, 2025),
https://www.afge.org/article/switch-to-afge-edues-now-before-its-too-late/ .......... 7

## INTRODUCTION

When Congress enacted the Federal Service Labor-Management Relations Statute (FSLMRS), Congress recognized the President's need to exempt agencies from collective bargaining to respond to ever-changing national-security considerations. *See* 5 U.S.C. § 7103(b)(1). In enjoining the President's use of that authority, the district court improperly exercised jurisdiction, inappropriately failed to defer to the President's national-security determinations, and employed an incorrect First-Amendment-retaliation standard. Plaintiffs do not rehabilitate these legal errors or offer any equitable reason this Court should countenance the district court's intrusion on the President's national-security prerogatives. The injunction should be stayed pending appeal.

## ARGUMENT

### I. THE GOVERNMENT IS LIKELY TO PREVAIL ON THE MERITS.

#### A. Plaintiffs Cannot Evade The FSLMRS's Statutory Review Scheme.

Plaintiffs' claims must be brought through the FSLMRS's review scheme, which is "exclusive with respect to claims within its scope," including "constitutional claims." *AFGE v. Trump* (*AFGE I*), 929 F.3d 748, 755-59 (D.C. Cir. 2019); *see* Mot.8-9. Accordingly, the district court lacked jurisdiction.

**1.** Plaintiffs assert that Congress empowered the FLRA to adjudicate only "compliance with the [FSLMRS's] substantive conduct rules," not the validity of the

President's determination under the FSLMRS provision at issue here, 5 U.S.C. § 7103(b)(1). Opp.5. That is incorrect. The FSLMRS empowers the FLRA to take "actions as are necessary and appropriate to effectively administer" any "provisions" of the statute, 5 U.S.C. § 7105(a)(2)(I), and Plaintiffs point to no limitations on that authority precluding the FLRA from reviewing a § 7103(b)(1) determination.

To the contrary, the FSLMRS has mechanisms allowing Plaintiffs to seek review of the executive order's legality. Mot.8-13. Plaintiffs can bring a dispute before the FLRA through a grievance or an unfair-labor-practice charge, asserting that defendant agencies have violated CBA provisions or the statute's substantive rules, 5 U.S.C. §§ 7116(a), 7118, 7121. To resolve either such new disputes or already-pending cases, the FLRA could consider the executive order's validity and thus whether the agency falls within the FSLMRS's provisions. If the FLRA found the executive order valid or otherwise dismissed a claim against an excluded agency, that would be a "final order of the [FLRA]" subject to judicial review in a court of appeals. *Id.* § 7123(a). Thus, the FLRA can consider Plaintiffs' claims, and federal district courts lack "concurrent jurisdiction over matters within the [FLRA's] exclusive purview." *AFGE v. Loy*, 367 F.3d 932, 935 (D.C. Cir. 2004).

This case bears no resemblance to *AFGE Local 446 v. Nicholson*, 475 F.3d 341 (D.C. Cir. 2007) (Opp.6), where an agency-specific statute prohibited review of the relevant decision "'by any other agency,'" including the FLRA. *Id.* at 347-48 (quoting 38 U.S.C. § 7422(d)). Thus, the rule that "'district courts do not have concurrent

jurisdiction over matters within the [FLRA's] exclusive purview'" did not apply, since Congress "expressly" brought challenges to the relevant determination "outside the FLRA's purview." *Id.* (quoting *Loy*, 367 F.3d at 935). Here, nothing in § 7103(b)(1) precludes the FLRA from entertaining challenges to its application. Plaintiffs err in arguing that the FLRA has "repeatedly" declined to exercise jurisdiction where the President has excluded agencies and subdivisions from FSLMRS coverage, Opp.6, citing only cases containing no indication that the union challenged an executive order's validity. *See* Mot.11; *AFGE Local 2118 & Dep't of Energy, Albuquerque Operations, Los Alamos Area Off.*, 2 F.L.R.A. 916 (1980).

Even if the FLRA somehow "could not decide" the validity of an order's FSLMRS exclusions, the point for jurisdictional-channeling purposes is that an FLRA dismissal for lack of jurisdiction would be subject to judicial review under 5 U.S.C. § 7123(a), so the "issue … could be meaningfully addressed in the Court of Appeals." *Elgin v. Department of Treasury*, 567 U.S. 1, 17 (2012) (quotations omitted). Plaintiffs err (Opp.7 n.1) in suggesting that FLRA members' removability alters the jurisdictional analysis. Plaintiffs fail to identify any FSLMRS provision suggesting the exclusivity of its review scheme turns on independence from Presidential control, and the ultimate review by a court of appeals obviates Plaintiffs' concerns.

**2.** Applying the *Thunder Basin* factors, Plaintiffs' claims are clearly of the type Congress intended to be reviewed within the FSLMRS's statutory structure. *Contra* Opp.7-9.

*First*, a finding of preclusion would not "foreclose all meaningful judicial review." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 190 (2023) (quotations omitted). As discussed, the FSLMRS grants Plaintiffs several avenues to challenge the President's executive order before the FLRA and in courts of appeals. *Supra* pp.2-3; Mot.9-10.

Plaintiffs assert that judicial review would come too late to be meaningful, contending that "their continued existence" is "threaten[ed]" if agencies do not collect dues for them, Opp.8. Yet "nothing prevents Union members … from voluntarily paying the dues they owe" directly to Plaintiffs, *NTEU v. Trump*, No. 25-5157, 2025 WL 1441563, at *2 (D.C. Cir. May 16, 2025), and Plaintiffs are currently soliciting such dues payments, Mot.23. Plaintiffs present no evidence that they cannot collect sufficient dues to maintain themselves.[1] Plaintiffs assert that the order renders Plaintiffs unable to operate as "labor organizations," making any judicial review too late to be meaningful. Opp.8. But any current limits on Plaintiffs' dues collection or interactions with Defendants are subject to meaningful relief through the FSLMRS; if Plaintiffs ultimately prevail, the FLRA can order Defendant agencies to negotiate any matter and impose retroactive remedies. *See* Mot.12-13.

*Second*, Plaintiffs contend their claims are "wholly collateral" to the FSLMRS's review provisions and "outside the [FLRA's] expertise." Opp.8 (quoting *Axon*, 598

---

[1] Plaintiff AFGE's website reports that "[m]ore than 150,000" members now pay dues directly. *Switch to AFGE E-Dues Now Before It's Too Late*, AFGE (June 2, 2025), https://www.afge.org/article/switch-to-afge-edues-now-before-its-too-late/.

U.S. at 186). Yet Plaintiffs' claims target alleged FSLMRS violations—the type of claim "regularly adjudicated" through the statute's remedial scheme—and fall within the FLRA's expertise because they "require interpreting the FSLMRS." *AFGE I*, 929 F.3d at 760-61; *see* Mot.10, 12.

Plaintiffs argue that the FLRA lacks any "distinctive knowledge" about whether § 7103(b)(1) determinations are appropriate, Opp.8. But the FLRA regularly adjudicates similar matters, determining whether individual employees are excluded from bargaining units because they are "engaged in intelligence, counterintelligence, investigative, or security work which directly affects national security." 5 U.S.C. § 7112(b)(6); *see Department of Energy, Oak Ridge Operations & NAGE Loc. R5-181*, 4 F.L.R.A. 644, 655-56 (1980). Plaintiffs' statutory claims require the FLRA to apply similar interpretive skills. Nor does the FLRA confine itself to what Plaintiffs deem "substantive provisions," eschewing "antecedent question[s]" about an agency's exclusion from bargaining. Opp.8. In *Loy*, the D.C. Circuit explained that the FLRA had "agreed" that an agency-specific statute "granted 'unfettered discretion'" to an agency official to "validly bar[]" employees "from engaging in collective bargaining." 367 F.3d at 934-35 (quoting *U.S. Dep't of Homeland Sec. & AFGE*, 59 F.L.R.A. 423, 430 (2003)). The "FLRA had the exclusive authority to render judgment" regarding collective bargaining's availability, "subject to review only in a court of appeals." *Id.* at 936.

Next, Plaintiffs assert that their constitutional claim is "collateral" and "outside the [FLRA's] expertise," Opp.8, but the FLRA has "consistently" resolved constitutional claims, including First-Amendment-retaliation claims. *See U.S. Dep't of Health & Hum. Servs. & Laborers Int'l Union Loc. 1376*, 60 F.L.R.A. 202, 207 & n.7 (2004) (citing cases). Moreover, constitutional claims fall within exclusive administrative-review schemes where, as here, agency resolution might "obviate the need to address the constitutional challenge" and the agency "can apply its expertise" to plaintiffs' statutory claims. *Elgin,* 567 U.S. at 22-23; *see* Dkt. 1, at 35-41.[2]

### B. Plaintiffs Cannot Rehabilitate The District Court's Flawed And Incomplete First Amendment Analysis.

The government is likely to prevail on the merits. The district court concluded that Plaintiffs raised a "serious question" whether the executive order violated the First Amendment. Op.19-22. Plaintiffs nowhere acknowledge that the district court's injunction rests on that lower standard. But under any applicable standard, the district court erred.

**1.** Plaintiffs have not established the requisite causal connection between constitutionally protected activity and the executive order. The FSLMRS "makes

[2] In *AFGE v. Trump*, 139 F.4th 1020, 1030 (9th Cir. 2025), this Court declined to stay an injunction pending appeal—a result the Supreme Court has since reversed, *see* 606 U.S. ___, 2025 WL 1873449 (July 8, 2025)—concluding that channeling was not required for plaintiffs' statutory claims this Court concluded fell outside the FLRA's expertise. Here, Plaintiffs' claims are very much "intertwined with or embedded in [FSLMRS] matters on which the [FLRA] [is] expert." *AFGE*, 139 F.4th at 1032 (quoting *Axon*, 598 U.S. at 195); *see* Mot.12.

clear that the President may exclude an agency … whenever he 'determines' that the conditions statutorily specified exist." *AFGE v. Reagan*, 870 F.2d 723, 727 (D.C. Cir. 1989) (quoting 5 U.S.C. § 7103(b)(1)). Section 7103(b)(1) "fairly exudes deference" to the President "and appears … to foreclose the application of any meaningful judicial standard of review" regarding the President's conclusion that national-security considerations support exclusions. *Webster v. Doe*, 486 U.S. 592, 600 (1988). While the broad leeway Congress afforded the President may not preclude limited judicial review of constitutional claims, *see id.* at 603-04, any such review must reflect the deference afforded the President in national-security matters and the presumption he properly discharged his duties. Mot.14-15; *see Reagan*, 870 F.2d at 727. Although courts "do not defer to the [g]overnment's reading of the First Amendment," where litigants assert that the President acted from improper motives in making a determination "involving sensitive and weighty interests of national security," judicial deference is at its zenith—even when the First Amendment is involved, *Trump v. Hawaii*, 585 U.S. 667, 708 (2018) (quotations omitted).

In insisting that the requisite causal connection exists between the President's § 7103(b)(1) determinations and their First-Amendment-protected activity, Plaintiffs turn these principles upside down. Instead of deferring to the President's facially legitimate exercise of national-security authority, Plaintiffs invite this Court to infer that the President acted with unconstitutional animus. Their primary support (Opp.10-11) for this extraordinary inference is a White House fact sheet that explains

how union activity has impaired agency functioning in a manner that could undermine national security. Not only are such determinations constitutionally permissible, they are the very determinations § 7103(b)(1) entrusts the President to make. Mot.16-17. The fact sheet details the national-security roles of entities excluded from FSLMRS coverage, including border security, national defense, and pandemic preparedness. SA.58-59. The fact sheet then illustrates ways that union activity can "obstruct agency management" and undermine national-security functions, like requiring Immigration and Customs Enforcement to bargain over cybersecurity measures. SA.59-60; *see* Mot.16-17. Far from supporting Plaintiffs' invitation to ascribe unconstitutional motives to the President, the fact sheet demonstrates the propriety of the President's actions.

Plaintiffs contend (Opp.11-12) that the President was constitutionally barred from considering the impact of union actions on national security. But the effect of First-Amendment-protected activity can be a "wholly legitimate consideration" in governmental decision-making. Mot.17 (quoting *Nieves v. Bartlett*, 587 U.S. 391, 401 (2019)). Plaintiffs are wrong (Opp.11 & n.4) that this principle applies only in "retaliatory arrest cases" involving "'split-second judgments.'" The Supreme Court drew it from non-arrest contexts, explaining that "[l]ike retaliatory prosecution cases, … the connection between alleged animus and injury may be weakened in the arrest context by a police officer's wholly legitimate consideration of speech." *Reichle v. Howards*, 566 U.S. 658, 668 (2012). Accordingly, the insight that "protected speech …

may both convey information" that can be legitimately considered in official actions *and* support "retaliatory animus" is hardly confined to arrests; this Court has applied the rule more broadly. *Boquist v. Courtney*, 32 F.4th 764, 778 (9th Cir. 2022) (no First Amendment violation given "an objectively legitimate need to implement security measures in response to information conveyed by the plaintiff's speech").

Plaintiffs' dissatisfaction with what they deem (Opp.13) "overbreadth" and "jagged line drawing" in the executive order is an equally unsound basis to infer unconstitutional motivations. Plaintiffs fail to grapple with clear precedent that causal animus cannot be inferred in the national-security context by quarreling with an order's scope given the deference owed to the "Executive's predictive judgments." *Hawaii*, 585 U.S. at 707-08; *see* Mot.16.

**2.** Even if Plaintiffs could establish a *prima facie* case, they do not contest that the district court entirely failed to consider whether the President would have issued the executive order absent the purported animus. *See* Opp.14. That is reason enough to reverse the injunction. Mot.18.

Plaintiffs instead assert that Defendants failed to present evidence that the President would have issued the order absent any retaliatory motive. Opp.14. Yet Plaintiffs then recount record evidence that *supports* Defendants' claim—including the fact sheet explaining how unions' activities have impaired agency national-security functions—a consideration the FSLMRS expressly permits and the Constitution does not forbid. Mot.18. Indeed, the "facially legitimate" reason articulated for the

President's order is itself a sufficient basis for courts to decline to overturn national-security determinations that "can reasonably be understood to result from a justification independent of unconstitutional grounds." *Hawaii*, 585 U.S. at 703-05 (quotations omitted). And as discussed, Plaintiffs' attempt (Opp.16) to locate animus in the scope and specificity of the President's exclusions is flatly inconsistent with the judiciary's limited role in evaluating Executive Branch choices in the national-security context. *See Hawaii*, 585 U.S. at 707-08.[3]

## II. THE EQUITABLE FACTORS FAVOR A STAY.

The equitable balance strongly supports a stay. The injunction bars implementation of a statutorily authorized determination made by the President to preserve national security, "an urgent objective of the highest order." *Trump v. International Refugee Assistance Project*, 582 U.S. 571, 581 (2017) (per curiam) (quotations omitted). Both the Constitution and the FSLMRS reflect the President's role in making judgments about how best to advance that objective. Plaintiffs' contention that this Court should treat those judgments about collective bargaining's impact on

[3] Plaintiffs are wrong to suggest that the deference the Supreme Court showed the Executive's national-security determinations in *Hawaii*—and its reluctance to second-guess the President's facially proper motives—apply only to foreign nationals' entry to the United States. Opp.15-16. The Court's concerns about judicial competence in this sensitive area are equally applicable in other national-security matters. *See* 585 U.S. at 703-04. Similarly, Plaintiffs offer (Opp.16 n.8) no reasoned response why the government's additional leeway when acting qua contractor (or employer) rather than a sovereign, *see Board of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 685 (1996), is inapplicable here in deciding what sort of contracts to maintain with federal-employee unions.

agencies' national-security functions as "speculative" or mere "administrative tasks," Opp.17, cannot be reconciled with the balance between the political and judicial branches. And their suggestion (Opp.17-19) that this Court should discount agency declarations because some emergency-related statutory authorities exist is baffling; national-security concerns do not arise only on an emergency basis. The crux of national-security planning is *preventing* and *preparing* for emergencies. Particularly in this preliminary posture, the Court should stay the injunction's interference with the Executive Branch's decisions about its own internal operations in this sensitive area. *See NTEU*, 2025 WL 1441563, at *2.

Weighed against the injunction's intrusion on such matters, Plaintiffs point to entirely remediable harms. That agencies are not currently collecting Plaintiffs' dues from federal employees does not prevent Plaintiffs from collecting their own dues—as they are currently doing. Mot.23. And Plaintiffs nowhere dispute that any monetary loss that occurs despite such obvious self-help measures would be recoverable given the FLRA's authority to order reimbursement if an agency wrongfully fails to withhold dues.

Nor do Plaintiffs identify irreparable harm from agencies' current cessation of active bargaining. The FLRA or a court could order an agency to undo any non-negotiated changes to working conditions if Plaintiffs prevail. *Small v. Avanti Health Systems* is inapposite, addressing National Labor Relations Board proceedings, in which such retrospective relief is generally unavailable. *See* 661 F.3d 1180, 1191-92

(9th Cir. 2011). And Plaintiffs' invocation (Opp.22) of chill-related harms fails to address how the equitable analysis operates regarding protected activity that could give rise to legitimate government concerns as well as asserted unconstitutional animus, *see supra* pp.8-9.

As the D.C. Circuit recognized, the equities favor staying injunctions barring this executive order's implementation. Mot.21-22. The D.C. Circuit did not act "on a misunderstanding of the facts" about the order's implementation. Opp.21. Rather, the D.C. Circuit recognized that the defendant agencies have not yet terminated collective-bargaining agreements with plaintiff there. *NTEU*, 2025 WL 1441563, at *2. Here, all but one defendant is in the same posture. Add.30-33. And whether a CBA has been terminated or not, the FLRA can remedy any harms resulting from CBA noncompliance after litigation concludes. Mot.22-23.

This Court, like the D.C. Circuit, should stay the injunction "t[ying] the government's hands" and improperly "transfer[ring] … control[] from the Executive to the Judiciary … in the national security context, an area in which the President generally enjoys unique responsibility." *NTEU*, 2025 WL 1441563, at *2 (quotations omitted).

## CONCLUSION

The Court should stay the district court's preliminary injunction pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MELISSA N. PATTERSON
JOSHUA M. KOPPEL
*/s/ Tyler J. Becker*
TYLER J. BECKER
*Attorneys*
*Civil Division, Room 3632*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4052*
*tyler.becker@usdoj.gov*

July 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and Local Rules 27-1(d) and 32-3 because it contains 2,799 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Tyler J. Becker*
TYLER J. BECKER