FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 1 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; NATIONAL NURSES ORGANIZING COMMITTEE - NATIONAL NURSES UNITED; SERVICE EMPLOYEES INTERNATIONAL UNION; NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC.; NATIONAL FEDERATION OF FEDERAL EMPLOYEES, IAM, AFL-CIO; AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO,<br><br>          Plaintiffs - Appellees,<br><br> v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; UNITED STATES OFFICE OF PERSONNEL MANAGEMENT; UNITED STATES DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in her official capacity as Secretary of Agriculture; UNITED STATES DEPARTMENT OF DEFENSE; PETER HEGSETH, in his official capacity as U.S. Secretary of Defense; UNITED STATES DEPARTMENT OF ENERGY; CHRIS WRIGHT, in his official capacity as Secretary of Energy; UNITED STATES DEPARTMENT OF HEALTH AND | No. 25-4014<br><br>D.C. No.<br>3:25-cv-03070-JD<br>Northern District of California,<br>San Francisco<br><br>ORDER |

HUMAN SERVICES; ROBERT F. KENNEDY, Jr., in his official capacity as Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, in his official capacity as Secretary of the U.S. Department of Housing and Urban Development; DOJ - UNITED STATES DEPARTMENT OF JUSTICE; PAMELA BONDI, Attorney General, in her official capacity as U.S. Attorney General; UNITED STATES DEPARTMENT OF THE INTERIOR; DOUG BURGUM, in his official capacity as Secretary of the Interior; LORI CHAVEZ-DEREMER, in her official capacity as Secretary of Labor; MARCO RUBIO, in his official capacities as U.S. Secretary of State and Acting Administrator for the U.S. Agency for International Development; UNITED STATES DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in his official capacity as U.S. Secretary of the Treasury; UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, in his official capacity as Secretary of Transportation; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DOUG COLLINS, in his official capacity as U.S. Secretary of Veterans Affairs; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his official capacity as Administrator of the U.S. Environmental Protection Agency;

UNITED STATES GENERAL SERVICES ADMINISTRATION; STEPHEN EHIKIAN, in his official capacity as Acting Administrator of the General Services Administration; NATIONAL SCIENCE FOUNDATION; SOCIAL SECURITY ADMINISTRATION; CHARLES EZELL, in his official capacity as Acting Director of the U.S. Office of Personnel Management; UNITED STATES DEPARTMENT OF STATE; UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT; SETHURAMAN PANCHANATHAN, in his official capacity as Director of the U.S. National Science Foundation; U.S. INTERNATIONAL TRADE COMMISSION; AMY A. KARPEL, in her official capacity as Chair of the U.S. International Trade Commission; LELAND DUDEK, Acting Commissioner of Social Security, in his official capacity as Acting Commissioner of the Social Security Administration; UNITED STATES DEPARTMENT OF EDUCATION; LINDA MCMAHON, in her official capacity as Secretary of Education,

　　　　　　Defendants - Appellants.

Before: John B. Owens, Bridget S. Bade, and Daniel A. Bress, Circuit Judges.

PER CURIAM:

　　　The United States seeks an emergency stay of the district court's preliminary injunction of Executive Order 14,251, *Exclusions From Federal Labor-Management Relations Programs*, 90 Fed. Reg. 14,553 (Apr. 3, 2025), which

excludes certain federal agencies and subdivisions from collective bargaining requirements based on national security concerns. We grant the government's request for a stay of the injunction pending appeal.

I

Congress enacted the Federal Service Labor-Management Relations Statute (FSLMRS) as part of the Civil Service Reform Act of 1978. Pub. L. No. 95-454, 92 Stat. 1111 (1978) (codified at 5 U.S.C. §§ 7101–7135). The FSLMRS begins with a series of Congressional findings, including that "labor organizations and collective bargaining in the civil service are in the public interest." 5 U.S.C. § 7101(a). To that end, the FSLMRS guarantees federal employees the right to join labor unions, requires unions and federal agencies to negotiate in good faith over matters involving the "conditions of employment," and requires all collective bargaining agreements to include procedures for filing grievances. *Id.* §§ 7102(2), 7114(a)(4), 7117, 7121. To administer this scheme, the FSLMRS established the Federal Labor Relations Authority (FLRA), *id.* § 7104, which, among other responsibilities, "resolves issues relating to the duty to bargain in good faith" and "conduct[s] hearings and resolve[s] complaints of unfair labor practices," *id.* § 7105(a)(2); *see also id.* §§ 7117, 7118.

Notwithstanding Congress's findings about the benefits of collective bargaining, the FSLMRS exempts several federal agencies from coverage, including the Government Accountability Office, the Federal Bureau of Investigation, the

Central Intelligence Agency, the National Security Agency, the Tennessee Valley Authority, and the United States Secret Service. *Id.* § 7103(a)(3). Relevant here, the statute also authorizes the President to exclude additional agencies or subdivisions from coverage "if the President determines that—(A) the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, and (B) the provisions of this chapter cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations." *Id.* § 7103(b)(1). Since Congress passed the FSLMRS, every President except President Biden has issued executive orders excluding certain agency subdivisions under § 7103(b)(1). *See, e.g.*, Exec. Order No. 12,171, 44 Fed. Reg. 66,565 (Nov. 20, 1979); Exec. Order No. 13,039, 62 Fed. Reg. 12,529 (Mar. 14, 1997); Exec. Order No. 13,480, 73 Fed. Reg. 73,991 (Dec. 4, 2008).

On March 27, 2025, President Trump issued Executive Order 14,251 ("EO 14,251" or "the Order"), which invoked § 7103(b)(1) to exclude from the FSLMRS over 40 cabinet departments, agencies, and subdivisions. Exec. Order No. 14,251, 90 Fed. Reg. 14,553, 14,553–55 (Apr. 3, 2025); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump* (*AFGE AFL-CIO*), No. 25-CV-03070-JD, 2025 WL 1755442, at *1 (N.D. Cal. June 24, 2025). The excluded entities include the Department of State, the Department of Defense, the Department of Justice, the Environmental Protection

Agency, the Federal Communications Commission, and subdivisions of the Departments of Treasury, Energy, Agriculture, Homeland Security, Interior, Health and Human Services, and the Social Security Administration. Exec. Order No. 14,251, 90 Fed. Reg. at 14,553–55. The Order contains exceptions for "local employing offices of any agency police officers, security guards, or firefighters, provided that this exclusion does not apply to the Bureau of Prisons" and subdivisions of the United States Marshals Service, the Department of Defense, and the Department of Veterans Affairs. *Id.* at 14,554–14,556.

On the same day as the Order, the White House issued a "Fact Sheet" and the Office of Personnel Management (OPM) issued a related guidance memo. White House, *Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements* (Mar. 27, 2025), https://perma.cc/Y7HR-4W3H (Fact Sheet); Memorandum from Charles Ezell, Acting Dir., Off. of Pers. Mgmt., to Heads and Acting Heads of Departments and Agencies (Mar. 27, 2025), https://perma.cc/QH4A-MQ9F (OPM Guidance). In explaining the Order, the Fact Sheet stated that union activities impaired agency functioning in a manner that could undermine national security, including by impeding the removal of employees for poor performance or misconduct. *See* Fact Sheet. The Fact Sheet also noted that the FSLMRS "enables hostile Federal unions to obstruct agency management" and that "[c]ertain Federal unions have declared

war on President Trump's agenda." *Id.* The OPM Guidance explained that the Order could improve agency functioning because collective bargaining agreements impeded the separation of poor performers, the issuance of return-to-work policies, and reductions in force. OPM Guidance 3, 5–6.

On April 3, 2025, Plaintiffs, six unions representing over a million federal employees, sued the President, the federal departments and agencies subject to EO 14,251, and the heads of those departments and agencies. *AFGE AFL-CIO*, 2025 WL 1755442, at *1, *7. Plaintiffs' suit claimed that EO 14,251 constituted First Amendment retaliation and viewpoint discrimination, was ultra vires action, violated Fifth Amendment procedural due process, abrogated contractual property rights in violation of the Fifth Amendment, and violated the Equal Protection component of the Fifth Amendment by engaging in arbitrary and irrational classification. *Id.* at *7.

On April 7, 2025, Plaintiffs filed an ex parte motion for a temporary restraining order—which the district court later construed as a motion for a preliminary injunction—asking the district court to enjoin the government from implementing EO 14,251. On April 8, 2025, in response to this suit and others, the Chief Human Capital Officers Counsel, an interagency forum led by the Director of OPM, advised agencies and subdivisions subject to the Order not to terminate any collective bargaining agreements or to take action to decertify any bargaining units until the conclusion of litigation.

On June 24, 2025, the district court granted Plaintiffs' request for a preliminary injunction, ruling only on the basis of First Amendment retaliation, which the court deemed Plaintiffs' strongest claim. *AFGE AFL-CIO*, 2025 WL 1755442, at *9, *15–16. The district court began by noting that in the Ninth Circuit, a plaintiff can satisfy the preliminary injunction standard's requirement to show a likelihood of success on the merits by presenting "serious questions going to the merits" when "the balance of hardships tips sharply in plaintiff's favor." *Id.* at *8 (alteration omitted) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). The court concluded that Plaintiffs "demonstrated a serious question" as to whether the Order retaliated against Plaintiffs for filing lawsuits against, and issuing public statements critical of, the current Administration. *Id.* at *9–10.

In assessing retaliatory motive, the district court pointed to statements in the Fact Sheet that it regarded as expressing a view "hostile to federal labor unions and their First Amendment activities." *Id.* at *11. These include that the FSLMRS "enables hostile Federal unions to obstruct agency management," that "[c]ertain Federal unions have declared war on President Trump's agenda," that "[t]he largest Federal union describes itself as 'fighting back' against Trump," and that "President Trump supports constructive partnerships with unions who work with him" but "will not tolerate mass obstruction that jeopardizes his ability to manage agencies with

vital national security missions." Fact Sheet; *see also AFGE AFL-CIO*, 2025 WL 1755442, at *6, *11. The district court reasoned that such statements "called out federal unions for vocal opposition" to the President, "condemned unions who criticized the President[,] and expressed support only for unions who toed the line." *Id.* at *11.

Although the district court disclaimed any "intention . . . of second-guessing the President's national security determinations," it noted that "[t]he government itself had a hard time saying why" certain excluded agencies "might be properly regarded as having a primary mission of national security," and that "[m]any of the departments and agencies listed in EO 14251 do not readily appear to fit" the definition of "national security." *Id.* at *11–12. The court treated this as "evidence in the record of a serious and plausible First Amendment question," but maintained that it would not "sit in judgment of the President's national security determinations." *Id.* at *12.

With respect to the remaining preliminary injunction factors, the district court concluded that Plaintiffs had shown a likelihood of irreparable harm based on the threat to union operations posed by reductions in allotted dues, the loss of collective bargaining rights, and weakened support for unions. *Id.* at *12–14. The district court also found that the balance of hardships and the public interest favored Plaintiffs because the government had deferred implementation of aspects of the

Order and because of the FSLMRS's general finding that collective bargaining in the civil service is in the public interest. *Id.* at *14–15 (citing 5 U.S.C. § 7101(a)).

The government filed emergency motions to stay the preliminary injunction pending appeal in both this court and the district court. On July 7, 2025, we granted the government's request for an administrative stay pending our consideration of the emergency motion. On July 8, 2025, the district court denied the government's motion for a stay pending appeal. We now grant the government's emergency motion for a stay of the injunction pending appeal.[1]

## II

We review the government's request for a stay pending appeal under the following four factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors . . . are the most critical." *Id.* at 434.

---

[1] In doing so, we act consistently with the results of two orders of the D.C. Circuit, which recently stayed two preliminary injunctions of Executive Order 14,251. *Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) (per curiam); *Am. Foreign Serv. Ass'n v. Trump*, No. 25-5184, 2025 WL 1742853 (D.C. Cir. June 20, 2025) (per curiam). The preliminary injunctions in those cases were based on the claim that the Order was ultra vires.

A plaintiff claiming First Amendment retaliation must show "that (1) [it] was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Bello-Reyes v. Gaynor*, 985 F.3d 696, 700 (9th Cir. 2021) (quoting *Capp v. County of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019)). Once such a showing is made, "the burden shifts to the government to show that it 'would have taken the same action even in the absence of the protected conduct.'" *Id.* at 702 (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The district court did not appear to address this latter issue.

We conclude the government has shown that it is likely to succeed on the merits of the retaliation claim. Even assuming that Plaintiffs have made out a prima facie claim of retaliation, on this record the government has shown that the President would have taken the same action even in the absence of the protected conduct. *See Mt. Healthy*, 429 U.S. at 287; *Bello-Reyes*, 985 F.3d at 702. On its face, the Order does not express any retaliatory animus. Instead, it conveys the President's determination that the excluded agencies have primary functions implicating national security and cannot be subjected to the FSLMRS consistent with national security. Exec. Order No. 14,251, 90 Fed. Reg. at 14,553.

For their part, Plaintiffs rely on statements in the Fact Sheet, the Order's broad scope, and the Order's carve-outs for law enforcement offices within the excluded agencies, including the Bureau of Prisons, whose employees are represented in collective bargaining by one of the Plaintiffs. We will assume for present purposes that "it may be appropriate" to look "beyond the facial neutrality of the order," *Trump v. Hawaii*, 585 U.S. 667, 704 (2018), and to consider the Fact Sheet. But even accepting for purposes of argument that certain statements in the Fact Sheet reflect a degree of retaliatory animus toward Plaintiffs' First Amendment activities, the Fact Sheet, taken as a whole, also demonstrates the President's focus on national security.

The Fact Sheet first explains that the excluded agencies and subdivisions serve national security in areas including national defense, border security, foreign relations, energy security, pandemic preparedness and response, and cybersecurity. *See* Fact Sheet. It then states that the FSLMRS allows unions to "obstruct agency management," including by impeding the removal of employees for "poor performance or misconduct," which is contrary to the need for "a responsive and accountable civil service to protect our national security." *Id.* The Fact Sheet thus conveys that EO 14,251 advances national security by curtailing union activity that undermines the agile functioning of government offices with national security-related missions. In other words, the Fact Sheet conveys an overarching objective

of protecting national security through its assessment that collective bargaining impedes the functioning of agencies with national security-related responsibilities.

Plaintiffs also rely on the Order's broad scope and allegedly "jagged line drawing" to demonstrate animus. They argue that the Order is both over-inclusive, because it covers agencies with no discernible connection to national security, and under-inclusive, because it exempts certain law-enforcement employees except for those represented by Plaintiffs. We question whether we can take up such arguments, which invite us to assess whether the President's stated reasons for exercising national security authority—clearly conferred to him by statute—were pretextual. But even if we assume that the Order's line drawing could constitute some evidence of targeting, on the balance of the record before us, the Order reflects that the President would have taken the same action even in the absence of the protected conduct. *See Mt. Healthy*, 429 U.S. at 287; *Bello-Reyes*, 985 F.3d at 702. The Order itself and the Fact Sheet fairly indicate that the President would have issued the Order, regardless of Plaintiffs' speech, based on the perceived impact of union activities and collective bargaining on the sound operation of agencies and subdivisions with national security-related missions. *See* Fact Sheet.

The government has also established a likelihood that it will suffer irreparable harm absent a stay. *Nken*, 556 U.S. at 434–35. As the D.C. Circuit explained in staying an injunction of the same Executive Order, although the government has

deferred implementation of aspects of EO 14,251, the government "suffers irreparable harm even to the extent the preliminary injunction overlaps with the [g]overnment's self-imposed restrictions" because the injunction "ties the government's hands . . . in the national security context." *Nat'l Treasury Emps. Union*, 2025 WL 1441563, at *2. As the Supreme Court recently reiterated, "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2562 (2025) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)); *see also Immigrant Defs. L. Ctr. v. Noem*, No. 25-2581, 2025 WL 2017247, at *13 (9th Cir. July 18, 2025) ("[W]e acknowledge the harms involved in denying the duly elected branches the policies of their choice." (citing *CASA*, 145 S. Ct. at 2562)). The government's supporting declarations reinforce its assertions of irreparable harm. For example, a declaration from the State Department states that the preliminary injunction risks slowing the reallocation of resources to functions that protect American citizens abroad, such as chartering evacuation flights and facilitating overseas communications, and to programs that support national security.

The remaining stay factors also favor the government. *Nken*, 556 U.S. at 435–36. Whatever harm to collective bargaining rights that Plaintiffs will experience due to a stay is mitigated by the direction to agencies to refrain from terminating

collective bargaining agreements until litigation has concluded. Moreover, any terminated agreements can be reinstated if Plaintiffs ultimately prevail. It is also speculative whether Plaintiffs will experience harm through "weakened support for unions," *AFGE AFL-CIO*, 2025 WL 1755442, at *14, and paused administration of dues collection can be addressed by voluntary dues payment in the interim and by monetary damages at the end of litigation, *see Nat'l Treasury Emps. Union*, 2025 WL 1441563, at *2. Finally, staying the injunction will serve the public interest by "preserving the President's autonomy under a statute that expressly recognizes his national-security expertise." *Id.* at *3.[2]

\* \* \*

For the foregoing reasons, we **GRANT** the government's motion for a stay of the district court's injunction pending appeal.

---

[2] The government also challenges the district court's jurisdiction but agrees we need not reach this issue in the present posture. We do not reach the government's jurisdictional argument because we are not considering an appeal of the preliminary injunction, but only whether to grant the government's motion for a stay, for which we have jurisdiction "under the All Writs Act, 28 U.S.C. § 1651." *Newsom v. Trump*, 141 F.4th 1032, 1043 (9th Cir. 2025) (per curiam).