No. 25-4014

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,

*Plaintiffs – Appellees,*

V.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.

*Defendants – Appellants.*

_____

On Appeal from the United States District Court

for the Northern District of California (3:25-cv-03070-JD)

_____

---

**BRIEF AMICI CURIAE OF FORMER SENIOR NATIONAL SECURITY OFFICIALS AND ADVISORS, AND OTHER INTERESTED PARTIES, IN SUPPORT OF APPELLEES' ANSWERING BRIEF**

---

Asim M. Bhansali
Kate E. Lazarus
Scott W. Taylor
KWUN BHANSALI LAZARUS LLP
555 Montgomery St., Suite 750
San Francisco, CA 94111
(415) 630-2350

Elena Goldstein
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090

*Counsel for Amici Curiae John Beed, Charles Blanchard, Todd Buchwald, Mary DeRosa, Gordon Gray, Raymond Limon, Alberto Mora, Mara Rudman, and Suzanne Spaulding*

**TABLE OF CONTENTS**

STATEMENT ....................................................................................................1

INTRODUCTION............................................................................................2

ARGUMENT ....................................................................................................4

I.  EO 14251 Undermines National Security by Casting Doubt on the United States Government's Commitment to the Rule of Law. ......................................4

II.  The Historic Practice of Narrowly Applying the FSLMRS National Security Exclusion Provision Achieves the Objectives Critical to Defending This Country: Protecting Lives and Territory, While Adhering to American Values and Ensuring Federal Workers' Ability to Bargain Collectively. ...........................................................................................8

   A.  The national security exclusion provision has historically been narrowly applied without endangering national security......................9

   B.  EO 14251 reflects an unprecedented expansion of the national security exclusion provision to cover employees with no connection to national security, and the collective bargaining rights of those employees do not threaten national security..............12

CONCLUSION .................................................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
No. 25-CV-03070-JD, 2025 WL 1755442 (N.D. Cal. June 24, 2025)....3, 6, 9, 12

*Cole v. Young*,
351 U.S. 536 (1956)................................................................................10, 11, 13

*Dep't of Energy, Oak Ridge Operations, Tenn. & Nat'l Ass'n of Gov't Emps. Loc. R5-181*,
4 F.L.R.A. 644 (1980)............................................................................10, 11, 13

*U.S. v. Morison,*
844 F.2d 1057 (4th Cir. 1988) .............................................................................7

**Statutes**

5 U.S.C. § 7101 ...................................................................................................4, 10

5 U.S.C. § 7102 ..........................................................................................................9

5 U.S.C. § 7103 ...............................................................................................9, 12, 13

5 U.S.C. § 7104 .......................................................................................................10

5 U.S.C. § 7105 .......................................................................................................10

6 U.S.C. § 111(b)(1) ................................................................................................12

**Other Authorities**

ALBERT CAMUS, ALGERIAN CHRONICLES 32
(Arthur Goldhammer trans., Harvard Univ. Press 2013) (1958) .........................3

David Dettman, *Upholding Prosperity: The Economic Benefits of the Rule of Law*, A.B.A. (Sep. 13, 2024) .............................................................................5

*Exclusions From Federal Labor-Management Relations Programs*,
90 Fed. Reg. 14,553 (April 3, 2025) ("EO 14251") ....................................*passim*

Executive Order 13,480, *Exclusions From the Federal Labor-management Relations Program*,
73 Fed. Reg. 73,991 (Dec. 4, 2008) ................................................................... 12

*Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements*, THE WHITE HOUSE (Mar. 27, 2025) ......................................................................... 7

JAMES E. BAKER, IN THE COMMON DEFENSE: NATIONAL SECURITY LAW FOR PERILOUS TIMES 2 (Cambridge Univ. Press 2007) ................................................. 6

## STATEMENT[1]

*Amici* are former senior national security officials, advisors, general counsel, and other interested parties. *Amici* are all committed to the rule of law and have a strong interest in the outcome of the above-captioned appeal; they seek to bring to the Court's attention the importance of the rule of law to national security.

*Amici* and their backgrounds are as follows:

- John Beed served as the U.S. Agency for International Development mission director in Guatemala (2017-2019) and India (2013-2015), among other senior foreign service roles.

- Charles Blanchard served as the General Counsel of the Air Force (2009-2013) and the Army (1999-2001).

- Todd Buchwald served as Ambassador and Special Coordinator, Office of Global Criminal Justice, U.S. Department of State (2015-2017), and as Assistant Legal Adviser, U.S. Department of State (1991-2015).

- Mary DeRosa served as Deputy Counsel to the President and National Security Council Legal Adviser (2009-2011).

- Gordon Gray served as the Deputy Commandant at the National War College (2014-2015) and was the United States' Ambassador to Tunisia (2009-2012), among other senior foreign service roles.

- Raymond Limon served as Chief Human Capital Officer (CHCO), Department of the Interior (2015-2022) and Deputy CHCO, Department of State (2012-2015).

---

[1] All parties have consented to the filing of this brief. No party's counsel authored the brief in whole or part. No party or a party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than *amici* their counsel contributed money to fund preparing or submitting this brief.

1

- Alberto Mora served as General Counsel of the Navy (2001-2006) and was a Senior Fellow at the Harvard Kennedy School of Government's Carr Center for Human Rights Policy (2015-2019).

- Mara Rudman served as deputy assistant to the President for national security affairs in the Obama administration (2009) and Clinton administration (1999-2001).

- Suzanne Spaulding served as undersecretary for the Department of Homeland Security (2011-2017), and as the assistant general counsel at the Central Intelligence Agency (1989-1995).

## INTRODUCTION

*Amici* submit this brief in support of Appellees' answering brief in opposition to Appellants' appeal of the district court's preliminary injunction of Executive Order 14,251, *Exclusions From Federal Labor-Management Relations Programs*, 90 Fed. Reg. 14,553 (April 3, 2025) ("EO 14251"). The district court's ruling should be affirmed.

The United States has two strategic objectives in protecting national security: 1) the protection of lives and territory; and 2) the protection of American values, freedoms, and laws. Both objectives must be pursued simultaneously. The Trump administration's attempt to extinguish associational and free speech rights in the name of "national security" is antithetical to what the United States should be trying to defend.[2] Under the pretense of protecting "national security," EO 14251 would

---

[2] *See* ALBERT CAMUS, ALGERIAN CHRONICLES 32 (Arthur Goldhammer trans., Harvard Univ. Press 2013) (1958) ("One must fight for one's truth while making sure not to kill that truth with the very arms employed to defend it[ ] . . . .").

unjustifiably extinguish the collective bargaining rights of "two-thirds of the federal workforce"[3] with the purpose of stifling free speech. Specifically, through the EO, the Trump administration attempts to unlawfully retaliate for views that it deems "hostile" to the administration's policies, without demonstrating any connection between the purported "hostility" and any hindrance on the administration's ability to promote national security.

In times of national emergency an administration may need to balance actions that it believes protect lives and property against protection of values, freedom, and laws, but EO 14251 is not the result of such a balancing; rather, it is a brazen action fundamentally inconsistent with the rule of law. As such, it endangers national security. Further, EO 14251 conflicts with decades of practice reflecting a careful, narrow application of the "national security" exclusion provision in the Federal Service-Labor Management Relations Statute ("FSLMRS"), 5 U.S.C. §§ 7101-7135. Indeed, EO 14251 reflects an unprecedented and unsupported expansion of that provision.

Accordingly, the Court should affirm the district court's ruling.

---

[3] *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03070-JD, 2025 WL 1755442, at *5 (N.D. Cal. June 24, 2025) (citation omitted) (hereinafter, "*AFGE AFL-CIO*").

**ARGUMENT**

The district court correctly found that Appellees had raised a serious question as to their First Amendment retaliation claim and did not abuse its discretion in granting a preliminary injunction. EO 14251 breaks with historical practice, and it does so in a way that tramples on fundamental liberties and undermines the rule of law, while endangering—under the guise of protecting—national security.

## I.     EO 14251 Undermines National Security by Casting Doubt on the United States Government's Commitment to the Rule of Law.

Adherence to the rule of law is critical to this country's national security. America's commitment to the rule of law has served to help ensure the sanctity of domestic and international agreements, and confidence in recourse for agreements gone awry. The role of courts as impartial interpreters and adjudicators of the actions of the legislative and executive branches is a basic pillar of American economic and national security and stability. It is a core component of the strength the United States projects around the world and demonstrates that a representative government operating within the bounds of the law and protecting the rights of its citizens helps ensure stability and economic prosperity.[4]

---

[4] *See* David Dettman, *Upholding Prosperity: The Economic Benefits of the Rule of Law*, A.B.A. (Sep. 13, 2024) ("At the heart of economic activity lies the need for certainty and predictability. The rule of law ensures that legal frameworks are transparent, consistent, and enforced impartially. In societies where the rule of law prevails, businesses can operate with confidence, knowing that contracts will be upheld, property rights protected, and disputes resolved fairly."), https://www.americanbar.org/advocacy/global-programs/news/2024/upholding-prosperity-economic-benefits-rule-law/.

America's "commitment to democratic values and the rule of law" has thus contributed to its long-held status as a leader on the world stage and its "exceptional position within the international legal system." *See* Winston P. Nagan & Craig Hammer, *The New Bush National Security Doctrine and the Rule of Law*, 22 BERKELEY J. INT'L L. 375, 401-02 (2004). If foreign states and businesses lose trust in America's willingness to accept that it—and its officials—are bound by the rule of law, that will harm national security, not promote it; official acts that flout the rule of law "erode both security and law." *See The Rule of Law in the Age of Terrorism,* WILSON CENTER 7 (Oct. 17, 2016).[5] That is precisely the effect of EO 14251, self-evidently designed as retaliation against federal workers for their real or perceived political views; specifically, political views that do not march in lockstep with the Trump administration.

It is well recognized that "national security has as a goal the defense of liberty as well as of our physical security." JAMES E. BAKER, IN THE COMMON DEFENSE: NATIONAL SECURITY LAW FOR PERILOUS TIMES 2 (Cambridge Univ. Press 2007).[6]

---

[5] https://www.wilsoncenter.org/sites/default/files/media/documents/event/kennan_cable_-_anti-terror_and_law.pdf.

[6] The Hon. James E. Baker is the current Director of the Syracuse University Institute for Security Policy and Law and served as a Judge on the United States Court of Appeals for the Armed Forces from 2000-2015. *Director*, SYRACUSE UNIV. INST. FOR SEC. POL'Y & L., https://securitypolicylaw.syr.edu/about_the_institute_for_security_policy_and_law/people/director/. Judge Baker also held multiple positions in a national security advisory role in previous presidential administrations, including as Special Assistant to the President and Legal Adviser to the National Security Council, and

That goal is thwarted by EO 14251. The Trump administration invokes "national security" as justification for retaliatory action intended to halt an otherwise permissible right to free speech protected under the Constitution. *See AFGE AFL-CIO*, 2025 WL 1755442, at *12 (noting the record raised "a serious and plausible First Amendment question" as to whether EO 14251 reflects "retaliation for protected speech"). In doing so, EO 14251 undermines national security by casting doubt on our government's commitment to the rule of law.

It is axiomatic that freedom of speech under the First Amendment, including the right not to be subjected to retaliatory action by the government for engaging in protected speech, is a foundational principle of our democracy; it protects expression of opposing political views and criticism of government policies. National security cannot justify retaliation for First Amendment-protected speech. Indeed, "[n]ational security is public security, not government security from informed criticism." *U.S. v. Morison,* 844 F.2d 1057, 1081 (4th Cir. 1988) (Wilkinson, J., concurring). Thus, "[t]he First Amendment interest in informed popular debate does not simply vanish at the invocation of the words 'national security.'" *Id.*

The Trump administration's current actions threaten to erode trust in America's commitment to free speech and the rule of law. EO 14251 is an unlawful exercise of retaliation and viewpoint discrimination that ignores the role defending

---

served as an Infantry Officer in the United States Marine Corps. *Id.*

fundamental liberties plays in protecting national security. Indeed, the Trump administration is not subtle about the intent and goal of its action, as evinced by the Fact Sheet issued in conjunction with EO 14251. The Fact Sheet expressly targets "hostile Federal unions," and declares that "[c]ertain Federal unions have declared war on President Trump's agenda."[7] It goes on to specifically single out unions of the Veterans' Administration that have filed numerous grievance actions since the President's inauguration.[8] The Fact Sheet further emphasizes that President Trump will engage "with unions who work with him," but "will not tolerate mass obstruction."[9] Thus, the Fact Sheet makes clear the purpose of EO 14251's unprecedented expansion of federal agencies excluded from the coverage under the FSLMRS—to punish unions perceived as "hostile" to the Trump administration's policies. In short, these unions have been targeted *specifically* because the Trump administration perceives them as "hostile" to its policies, and the administration has labeled them threats to "national security" without any demonstrated connection between that purported hostility and the administration's ability to promote national

---

[7] *Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements*, THE WHITE HOUSE (Mar. 27, 2025), https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-exempts-agencies-with-national-security-missions-from-federal-collective-bargaining-requirements/.

[8] *See id.*

[9] *Id.*

security. The Trump administration's goal is clear—silencing dissent, not protecting national security.

In so doing, the White House is effectively instructing federal workers not to offer a contrary or challenging viewpoint, even when doing so may lie well within their professional roles, be protected by law, or both. That action is not only unconstitutional and contrary to this country's longstanding adherence to the rule of law, but it also endangers this country's safety by potentially impeding national security officials from providing unvarnished counsel.

By retaliating against the Appellee unions based on their speech and petitioning, EO 14251 undermines U.S. national security.

II. **The Historic Practice of Narrowly Applying the FSLMRS National Security Exclusion Provision Achieves the Objectives Critical to Defending This Country: Protecting Lives and Territory, While Adhering to American Values and Ensuring Federal Workers' Ability to Bargain Collectively.**

"The FSLMRS grants and protects the rights of federal employees 'to form, join, or assist any labor organization, or to refrain from any such activities.'" *AFGE AFL-CIO*, 2025 WL 1755442, at *2 (quoting 5 U.S.C. § 7102). The statute excludes certain agencies from its coverage, *see* 5 U.S.C. § 7103(a)(3), and the President may exclude other government agencies and subdivisions thereof from coverage under the statute only if both "(A) the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, and (B)

8

the provisions of this chapter cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations," *id.* § 7103(b)(1). Until now, presidential administrations from both political parties have narrowly applied the national security exception limiting this right, even in times of heightened national security threats and direct conflict—*without* endangering national security. EO 14251 reflects a stark and unjustified departure from that practice.

### A. The national security exclusion provision has historically been narrowly applied without endangering national security.

The Federal Labor Relations Authority ("FLRA") was established to administer the FSLRMS, and among other things, "resolve[] issues relating to the duty to bargain in good faith" and "conduct hearings and resolve complaints of unfair labor practices." 5 U.S.C. §§ 7104, 7105(a)(2). The FLRA's decisions provide important guidance regarding the interpretation of "national security" for purposes of the exclusion provision.

The FLRA has held that "national security" must be read narrowly:

> [T]he term "national security" must be interpreted to include only those sensitive activities of the government that are directly related to the protection and preservation of the military, economic, and productive strength of the United States, including the security of the Government in domestic and foreign affairs, against or from espionage, sabotage, subversion, foreign aggression, and any other illegal acts which adversely affect the national defense.

*See Dep't of Energy, Oak Ridge Operations, Tenn. & Nat'l Ass'n of Gov't Emps. Loc. R5-181*, 4 F.L.R.A. 644, 655-56 (1980) (hereinafter, "*Oak Ridge*") (citing *Cole v. Young*, 351 U.S. 536 (1956)).

In rendering that opinion, the FLRA noted Congress's express determination that "[l]abor organizations and collective bargaining in the civil service" are "'in the public interest.'" *Id.* at 655 (quoting 5 U.S.C. § 7101(a)). The FLRA also relied on the Supreme Court's pre-FSLMRS decision in *Cole v. Young*, which addressed "the meaning of the term 'national security' as used in" a statute that allowed "the heads of certain departments and agencies of the Government summary suspension and unreviewable dismissal powers over their civilian employees, when deemed necessary 'in the interest of the national security of the United States.'" 351 U.S. at 538 (quoting 64 Stat. 476). In rejecting the government's interpretation of "national security" as "indefinite and virtually unlimited," the Court determined that the term had a "narrow meaning" and was "intended to comprehend only those activities of the Government that are directly concerned with the protection of the Nation from internal subversion or foreign aggression, and not those which contribute to the strength of the Nation only through their impact on the general welfare." *Id.* at 544-47. The Court further warned that a broad interpretation of "national security" "could be utilized effectively to supersede [general federal personnel law]." *Id.* at 547-48.

10

In line with the narrow reading of the term "national security" espoused in *Oak Ridge* and *Cole*, past presidential administrations have taken a careful approach when applying the exclusion provision based on national security. For example, in 1979 the Carter administration excluded agency *subdivisions* "principally in the Department of Defense and the Department of the Treasury"; the Reagan administration "exempted specific divisions of the Drug Enforcement Administration and U.S. Marshalls [sic]"; and in January 2002, the George W. Bush administration "excluded several agencies and subdivisions within the Department of Justice," in response to the terrorist attacks on September 11, 2001 ("9/11").[10] Significantly, neither Congress nor the George W. Bush administration categorically excluded[11] the Department of Homeland Security ("DHS") at its inception in 2002 following 9/11—the deadliest terrorist attack ever on American soil—even though the core purpose and "primary mission" of DHS is protecting the country from and responding to terrorist attacks.[12]

---

[10] *A Short History of the Statute*, FLRA, https://www.flra.gov/resources-training/resources/statute-and-regulations/statute/short-history-statute.

[11] *See* Executive Order 13,480, *Exclusions From the Federal Labor-management Relations Program*, 73 Fed. Reg. 73,991 (Dec. 4, 2008) (excluding agencies and subdivisions of, among others, the Department of Homeland Security).

[12] *See* 6 U.S.C. § 111(b)(1) (describing the "primary mission of the Department").

**B.**    **EO 14251 reflects an unprecedented expansion of the national security exclusion provision to cover employees with no connection to national security, and the collective bargaining rights of those employees do not threaten national security.**

EO 14251 relies on section 7103(b)(1) to remove "over 40 cabinet departments, agencies, and subdivisions across the federal government from the guarantee of collective bargaining rights under the FSLMRS." *AFGE AFL-CIO*, 2025 WL 1755442, at *1. That removal affects a broad swath of federal employees doing work that has *no* discernible direct connection to national security within the meaning of section 7103(b), including those working in agencies or subdivisions of the Department of Health and Human Services, the Department of the Interior, and the Department of Agriculture, among others. *Id.* at *4. Similarly, it excludes federal employees from the Environmental Protection Agency, the National Science Foundation, and the Federal Communications Commission, among others. *Id.*

There is no reasonable argument that the "primary function" of all employees in these agencies concerns "intelligence, counterintelligence, investigative, or national security," or that their engaging in collective bargaining would *threaten* national security—both of which are required for exclusion. *See* 5 U.S.C. § 7103(b)(1)(A)-(B). Indeed, the Trump administration's references to "national security" in the EO 14251 Fact Sheet are akin to the "indefinite and virtually unlimited" interpretation rejected by the Supreme Court in *Cole* and are contrary to the FLRA's interpretation in *Oak Ridge*. *See supra* Part II.A. Further, the federal

12

employees excluded under EO 14251 have been permitted to engage in collective bargaining during times of war and direct armed conflict under both Republican and Democratic administrations, with no adverse effect on national security. *See id.*

So, what changed between then and now to warrant the Trump administration's expansive read of "national security"? The answer is clear—EO 14251 is a pretext to stifle political dissent and retaliate against real or perceived views that the Trump administration admittedly deems "hostile" and at odds with its policies. Simply put, stripping the collective bargaining rights of a mailroom employee at the National Science Foundation has nothing to do with "national security" and everything to do with silencing critics of the current administration. Such a brazen attack on the rights of federal employees to speak freely, organize, and petition the government for redress is contrary to the rule of law and reflects an unprecedented expansion of section 7103(b) with no connection to national security. EO 14251 cannot stand.

## CONCLUSION

For the foregoing reasons, *amici* respectfully request that the Court affirm the district court's ruling.

Respectfully submitted,

KWUN BHANSALI LAZARUS LLP

Dated:  August 28, 2025

By: */s/ Asim M. Bhansali*

Asim M. Bhansali, SBN 194925
abhansali@kblfirm.com
Kate E. Lazarus, SBN 268242
klazarus@kblfirm.com
Scott W. Taylor, SBN 318941
staylor@kblfirm.com
KWUN BHANSALI LAZARUS LLP
555 Montgomery St., Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

Elena Goldstein
egoldstein@democracyforward.org
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090

*Counsel for Amici Curiae John Beed,
Charles Blanchard, Todd Buchwald,
Mary DeRosa, Gordon Gray, Raymond
Limon, Alberto Mora, Mara Rudman,
and Suzanne Spaulding*

14

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____ 25-4014 _____

    I am the attorney or self-represented party.

    **This brief contains** _____ 2965 _____ **words,** including _____ 0 _____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

    I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[**X**] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.
    29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _/s/ Asim M. Bhansali_____ **Date** _August 28, 2025_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

15