No. 25-4014

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO;
*et al.*,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, *in his official capacity as President of the United States,
et al.*,

*Defendants-Appellants.*

---

On Appeal from Order of the United States District Court
for the Northern District of California,
U.S. District Court Action No. 3:25-CV-03070-JD

---

## SUPPLEMENTAL BRIEF OF PLAINTIFFS-APPELLEES
## IN SUPPORT OF REHEARING EN BANC

---

Abigail V. Carter
Ramya Ravindran
Lane M. Shadgett
J. Alexander Rowell
BREDHOFF & KAISER P.L.L.C.
805 Fifteenth Street NW, Suite 1000
Washington, D.C. 20005
Tel. (202) 842-2600
Fax (202) 842-1888

*Attorneys for Plaintiffs-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................ii

INTRODUCTION ...................................................................................1

STATEMENT........................................................................................3

   I.   Executive Order 14251 Eliminates Congressionally Granted Labor Law Rights for the Vast Majority of the Federal Workforce .........................................3

   II.  The District Court Issues a Preliminary Injunction.......................................5

   III. The Panel Stays the Preliminary Injunction ...................................................6

ARGUMENT ........................................................................................7

   I.   The Panel Applied a Rule That Contravenes Established Precedent and Virtually Eliminates First Amendment Protections Against Government Retaliation.........................................................................................9

   II.  The Panel's First Amendment Analysis Raises a Question of Exceptional Importance that Requires En Banc Consideration ...............................................15

CONCLUSION .....................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFGE v. FLRA,*
  778 F.2d 850 (D.C. Cir. 1985) ............................................................3

*AFGE v. Trump,*
  139 F.4th 1020 (9th Cir. 2025) .........................................................18

*AFGE v. Trump,*
  148 F.4th 648 (9th Cir. 2025) .........................................6, 10, 11, 13, 14

*Anderson v. City of Bessemer City,*
  470 U.S. 564 (1985) ........................................................................13

*Bello-Reyes v. Gaynor,*
  985 F.3d 696 (9th Cir. 2021) ...........................................................10

*Boquist v. Courtney,*
  32 F.4th 764 (9th Cir. 2022) .......................................................10, 11

*CarePartners, LLC v. Lashway,*
  545 F.3d 867 (9th Cir. 2008) ...........................................................10

*Duffy v. Sarault,*
  892 F.2d 139 (1st Cir. 1989) ............................................................13

*E. Bay Sanctuary Covenant v. Biden,*
  993 F.3d 640 (9th Cir. 2021) .............................................................9

*Eng v. Cooley,*
  552 F.3d 1062 (9th Cir. 2009) .....................................................10, 12

*Hall v. Marion Sch. Dist. No. 2,*
  31 F.3d 183 (4th Cir. 1994) .............................................................13

*Janus v. AFSCME Council 31,*
  585 U.S. 878 (2018) ..........................................................................1

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
  429 U.S. 274 (1977) ....................................................................10, 11

ii

*NTEU v. Trump*,
  2025 WL 1441563 (D.C. Cir. May 16, 2025) .................................................14

*Nicholson v. Bd. of Educ. Torrance Unified Sch. Dist.*,
  682 F.2d 858 (9th Cir. 1982) ..............................................................13

*N.Y. Times Co. v. United States*,
  403 U.S. 713 (1971)..........................................................................12

*O'Brien v. Welty*,
  818 F.3d 920 (9th Cir. 2016) ..............................................................11

*President & Fellows of Harvard Coll. v. U.S. Dep't of Homeland Sec.*,
  2025 WL 1737493 (D. Mass. June 23, 2025)..........................................16

*Sorrano's Gasco, Inc. v. Morgan*,
  874 F.2d 1310 (9th Cir. 1989) ............................................................11

*Summerlin v. Stewart*,
  309 F.3d 1193 (9th Cir. 2002) ..............................................................9

*United States v. Robel*,
  389 U.S. 258 (1967)..........................................................................11

*W. Va. State Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943)..........................................................................12

*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the
  President*,
  784 F. Supp. 3d 127 (D.D.C. 2025)....................................................16

**Statutes**

5 U.S.C. § 7101(a) ............................................................................3, 17

5 U.S.C. § 7103(b)(1)...........................................................................4

**Other Authorities**

124 Cong. Rec. 29186 (Sept. 13, 1978) (statement of Rep. Clay) ...........................3

Alice Herman, *Russell Vought: Trump appointee who wants federal workers to be 'in trauma,'* The Guardian (Feb. 10, 2025), https://www.theguardian.com/us-news/2025/feb/10/who-is-russell-vought-trump-office-of-management-and-budget ............................................. 18

Chris Cameron, *Trump Moves to Strip More Federal Workers of Union Protections*, N.Y. Times (Aug. 29, 2025), https://www.nytimes.com/2025/08/29/us/politics/trump-federal-workers-union-protections.html ........................................................... 17

Dep't of Veterans Affs., *VA Terminates Union Contracts For Most Bargaining-Unit Employees* (Aug. 6, 2025), https://news.va.gov/press-room/va-terminates-union-contracts-for-most-bargaining-unit-employees/ ..................................................... 16

Eileen Sullivan, *Trump Orders Have Stripped Nearly Half a Million Federal Workers of Union Rights*, N.Y. Times (Sept. 1, 2025), https://www.nytimes.com/2025/09/01/us/politics/trumps-unions-federal-workers.html ........................................................... 14

Emily Peck, *Exclusive: VA rescinds weeks of parental leave - even for some giving birth this week*, Axios (Aug. 15, 2025), https://www.axios.com/2025/08/15/va-maternity-leave-veterans-union .......................................................................... 16, 17

Erich Wagner, *HHS the Latest to Cancel Union Contracts and Implement Trump's Order*, Gov't Exec. (Aug. 25, 2025), https://www.govexec.com/workforce/2025/08/hhs-latest-cancel-union-contracts-and-implement-trumps-order/407673/ ..................................... 15

Exec. Order 14343, *Further Exclusions from the Federal Labor-Management Relations Program*, 90 Fed. Reg. 42683 (Aug. 28, 2025) ....................................................................................... 2

Fed. R. Civ. P. 52(a)(6) ................................................................ 13

OPM Director Scott Kupor, *Building Momentum Through Legal Wins* (Aug. 15, 2025), https://www.opm.gov/news/secrets-of-opm/building-momentum-through-legal-wins/ ................................................. 14

## INTRODUCTION

This matter presents a question of exceptional importance on the rights of private organizations to voice opposition to government policies without fear of retaliation. Through Executive Order 14251, President Trump eliminated congressionally created labor law rights for approximately one million federal workers represented by unions deemed "hostile" to the President's agenda. Prior to that Executive Order, the Plaintiff Unions had repeatedly exercised their First Amendment rights to challenge the President's policies through lawsuits, lobbying, grievances, and public statements—speech that "'occupies the highest rung of the hierarchy of First Amendment values' and merits special protection." *Janus v. AFSCME Council 31*, 585 U.S. 878, 914 (2018) (citation omitted).

This Court should review en banc the panel decision granting a stay of the district court's preliminary injunction. The panel's analysis conflicts with well-established precedent governing First Amendment retaliation claims. And its decision has implications far beyond federal-sector labor relations. By giving the government broad license to retaliate against private organizations for First Amendment activity—and even threaten them with further retaliation—so long as it asserts that it is doing so for "national security," the panel decision green lights the Executive to punish anyone who speaks out against the administration's policies.

That is no hypothetical concern, as this Executive Order is far from the only instance in which the current administration has taken punitive measures against private parties for engaging in speech and petitioning. The panel's stay order is this Court's first published decision addressing an allegation of retaliatory conduct by this administration, and its holding effectively allows the government to prevail in such a case as a matter of law by mouthing the words "national security" as a motivation for its conduct. If left in place, the panel decision will undoubtedly embolden the government's further attempts to target disfavored speech—as it has already emboldened the government to further punish Plaintiffs and their members. Prior to the panel's stay decision, the government had advised agencies not to terminate existing collective bargaining agreements until this litigation had concluded. But within days of the stay decision, the government began terminating those contracts and has stripped yet more federal workers represented by Plaintiffs of their statutory rights.[1]

This case accordingly involves constitutional questions of exceptional and immediate importance that warrant en banc review. The Court should grant rehearing en banc of the panel's stay order, and, given the overlap of issues, the en banc Court

---

[1] *See* Exec. Order 14343, *Further Exclusions from the Federal Labor-Management Relations Program*, 90 Fed. Reg. 42683 (Aug. 28, 2025).

2

also should decide the fully briefed appeal of the district court's preliminary injunction in the first instance.

## STATEMENT

### I.    Executive Order 14251 Eliminates Congressionally Granted Labor Law Rights for the Vast Majority of the Federal Workforce

Upon concluding that "labor organizations and collective bargaining in the civil service are in the public interest," 5 U.S.C. § 7101(a), Congress enacted the Civil Service Reform Act of 1978 ("CSRA"), which gave federal workers the right to join labor organizations and engage in collective bargaining through their chosen representatives. Previously, federal workers were permitted to engage in collective bargaining only by a "series of Executive Orders." *AFGE v. FLRA*, 778 F.2d 850, 852 n.1 (D.C. Cir. 1985). The CSRA substituted "[a] statutory Federal labor-management program which cannot be universally altered by any President," codified at Chapter 71 of Title 5. 124 Cong. Rec. 29186 (Sept. 13, 1978) (statement of Rep. Clay). Since the enactment of the CSRA, federal workers throughout the government have joined together and elected unions as their exclusive bargaining representatives.

The CSRA permits the President to exclude a particular agency or subdivision from Chapter 71's coverage only when two statutory criteria are met: (1) "the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work," and (2) "the [statutory] provisions cannot

3

be applied to that agency or subdivision in a manner consistent with national security requirements and considerations." 5 U.S.C. § 7103(b)(1). Past Presidents have invoked this authority sparingly and have specified agency subdivisions "at a high level of granularity," GA 9, and none had sought to exclude even a meaningful percentage of the federal workforce, let alone a supermajority.[2]

On March 27, 2025, President Trump issued Executive Order 14251, which lists a sweeping array of agencies and subdivisions to be excluded from the coverage of Chapter 71, such as the Department of Veterans Affairs and the Environmental Protection Agency. SA 42-48; GA 6-8. The White House provided the rationale for the Executive Order in a contemporaneously published Fact Sheet. SA 57-61. The Fact Sheet was not subtle. It explained that "[c]ertain Federal unions have declared war on President Trump's agenda" and specifically noted that "[t]he largest Federal union"—Plaintiff AFGE—"describes itself as 'fighting back' against Trump." SA 60. The Fact Sheet contrasted federal unions "hostile" to President Trump to those who "work with him," explaining that "President Trump supports constructive partnerships" with the latter. SA 59-60.

---

[2] "GA" refers to the addendum to the government's emergency stay motion. "SA" refers to the supplemental addendum to Plaintiffs' brief in opposition.

## II.   The District Court Issues a Preliminary Injunction

Plaintiffs filed a lawsuit alleging that the Executive Order violated the First and Fifth Amendments and was *ultra vires*. GA 13. The district court granted Plaintiffs' motion for a preliminary injunction. S*ee* GA 1-29.

As relevant here, the district court determined that Plaintiffs had demonstrated a serious question whether the Executive Order unconstitutionally retaliated against them for their protected speech and petitioning. GA 17-22. The court found there was "solid evidence" that Plaintiffs' protected First Amendment activities—including lawsuits and public criticisms of the administration—were a substantial motivating factor for the Order, GA 17-20, and further found that "[t]he invocation of the national security exception in Section 7103(b)(1) does not necessarily rebut this nexus, as the government would have it." GA 20. "[A] claim of national security does not, of course, automatically negate the Constitution, particularly with respect to the First Amendment," the court explained, and it emphasized the scope of the Executive Order, which "applied the national security label to an unprecedented swath of federal agencies, including whole cabinet departments for the first time in history." GA 20. The court also found that the remaining preliminary-injunction factors weighed in Plaintiffs' favor. GA 22-26.

## III.    The Panel Stays the Preliminary Injunction

A panel of this Court granted a stay pending the government's appeal of the preliminary injunction. In a published opinion, the panel determined that the government was "likely to succeed on the merits of the retaliation claim." *AFGE v. Trump*, 148 F.4th 648, 654-56 (9th Cir. 2025). It disregarded the district court's conclusion about the problematic scope of the Order, instead, deeming it "facial[ly] neutral." *Id.* It then found that regardless of whether "certain statements in the Fact Sheet reflect a degree of retaliatory animus toward Plaintiffs' First Amendment activities, the Fact sheet, taken as a whole, also demonstrates the President's focus on national security." *Id.* at 655. From this, the panel concluded that "the government has shown that the President would have taken the same action even in the absence of the protected conduct." *Id.* at 654-55. Thus, under the panel's analysis, even where there is sufficient evidence of retaliatory animus to shift the burden of proof to the government, the government can satisfy that burden merely by pointing to its articulation of the very justification that the plaintiff claims is pretextual.

The panel also concluded that the remaining factors weighed in favor of a stay. *Id.* at 655-56. As relevant here, in balancing the equities, the panel concluded that "[w]hatever harm to collective bargaining rights that Plaintiffs will experience due to a stay is mitigated by the direction to agencies to refrain from terminating collective bargaining agreements until litigation has concluded." *Id.* at 656.

6

Within days of the stay decision, federal agencies began terminating their collective bargaining agreements with Plaintiffs and stated they would not recognize the rights contained in those contracts. *See* Dkts. 36.1 & 36.2. A few weeks later, the President issued another executive order excluding yet more agencies from Chapter 71, *supra* n.1, and shortly thereafter, these additional agencies began to terminate their collective bargaining agreements with Plaintiffs and other unions. *See infra* p. 17.

The Court has ordered the parties to file briefs "on whether the case should be reheard en banc." Dkt. 40.1. The merits of the appeal are now fully briefed.

## ARGUMENT

Almost 50 years ago, Congress enshrined in statute the right of federal workers to join unions and engage in collective bargaining through their chosen representatives. The Executive Order challenged here, which excludes approximately two-thirds of the federal workforce from that statutory scheme, is unprecedented and unlawful. As the district court determined, the evidence shows that the President issued the order to retaliate against unions for engaging in speech protected by the First Amendment, and the government has not rebutted that evidence merely because it contemporaneously asserted national security as the reason for the Executive Order. GA 20-22.

7

Under the panel's reasoning, the government can never be found to have engaged in First Amendment retaliation as long as the government states that it is acting to advance national security at the same time it engages in the retaliatory conduct. That principle, if accepted, would leave a gaping hole in the First Amendment. Indeed, in its most recent filing in this case, the government not only claims that the President has the authority to invoke the national security exception in § 7103(b) in response to protected speech, but also that he decides what the statutory language "national security" means in the first place. Dkt. 61 at 10-11. And even if the panel's reasoning is understood as an interpretation of the factual record in this case, the panel exceeded established limits on its appellate authority by re-weighing the evidence and replacing the district court's factual findings with its own.

The panel's errors have had real-world consequences for Plaintiffs and the hundreds of thousands of federal workers they represent. The government is treating the panel's decision as an inflection point: while the government had previously represented that agencies have been instructed *not* to terminate collective bargaining agreements before litigation challenging the Executive Order has concluded—a representation the panel relied on when weighing the equities in this case—the government started terminating collective bargaining agreements just five days after the stay decision issued. As a result, Plaintiffs have been stripped of their integral functions as labor organizations and federal workers have been left without the

8

statutory protections of collective action and union representation, protections that are critically important right now, when federal workers face unprecedented challenges.

The Court should hear this case en banc. Although a panel ruling on a stay motion does not bind a panel deciding the merits of a preliminary injunction appeal, the panel's published decision still "may be binding as precedent for other panels deciding the same issue." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660 (9th Cir. 2021). The serious First Amendment implications of the panel's analysis and the government's reliance on the decision to support further retaliatory actions warrant en banc review of the panel's stay ruling. And, if it does so, it would be most efficient for the en banc Court to decide the merits of the fully briefed preliminary-injunction appeal at the same time. *See Summerlin v. Stewart*, 309 F.3d 1193 (9th Cir. 2002) ("[W]hen a case is heard or reheard *en banc*, the *en banc* panel assumes jurisdiction over the entire case.")

## I.   The Panel Applied a Rule That Contravenes Established Precedent and Virtually Eliminates First Amendment Protections Against Government Retaliation

The panel committed fundamental errors. Most problematically, the panel's First Amendment analysis effectively forecloses First Amendment retaliation claims against the federal government. The panel's decision is further flawed because the

panel weighed the equities, at least in part, based on facts that subsequent developments have shown to be erroneous.

**A.**     It is well-established that if a district court finds that First Amendment activity was a substantial or motivating factor in the government's conduct toward the plaintiff, the burden *shifts* to the government to prove by a preponderance of the evidence that it would have taken the same action even without the impetus to retaliate. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Boquist v. Courtney*, 32 F.4th 764, 777-78 (9th Cir. 2022); *Bello-Reyes v. Gaynor*, 985 F.3d 696, 702 (9th Cir. 2021). "To meet this burden, [the government] must show by a preponderance of the evidence that it *would have* reached the same decision; it is insufficient to show merely that it *could have* reached the same decision." *CarePartners, LLC v. Lashway*, 545 F.3d 867, 877 (9th Cir. 2008) (emphasis added). "In other words, [the government] may avoid liability by showing that the [plaintiff's] protected speech was not a but-for cause of the" government's actions. *Eng v. Cooley*, 552 F.3d 1062, 1072 (9th Cir. 2009).

By determining conclusively that "on this record the government *has shown* that the President would have taken the same action even in the absence of the protected conduct," 148 F.4th at 654-55 (emphasis added), the panel upended this burden-shifting scheme and absolved the government of its burden of proof. The panel's analysis is tantamount to the adoption of a legal rule that a claim of First

Amendment retaliation fails as a matter of law as long as the government, at the same time it engages in the retaliatory conduct, "fairly indicate[s]," *id.* at 655, a non-retaliatory rationale for the conduct.

Such a rule conflicts with Circuit and Supreme Court precedent. It is "clear that there is a right to be free from retaliation even if a non-retaliatory justification exists for the [the government's] action." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016); *see also Mt. Healthy*, 429 U.S. at 283-84; *Boquist*, 32 F.4th at 785. If the government could overcome concrete evidence of retaliatory motive simply by declaring that it has a non-retaliatory motive at the time it engages in the retaliatory conduct, as the panel allows, then the government's evidentiary burden evaporates to a mere formality. Invoking a non-retaliatory motive merely raises the question of pretext; it does not conclusively answer the question in the defendant's favor, as the panel would have it. *See Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1315 (9th Cir. 1989) ("The defendants here have merely established that they *could* have suspended the permits. This court has clearly stated that this is insufficient to support summary judgment.").

That the government has invoked national security as a non-retaliatory motive does not change the First Amendment analysis. The protections of the First Amendment do not apply differently when the government claims national security as a rationale for restricting speech. *See United States v. Robel*, 389 U.S. 258, 264

11

(1967) ("It would indeed be ironic if, in the name of national defense, we would sanction the subversion of one of those liberties…which makes the defense of the Nation worthwhile."); *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (rejecting prior restraint on newspaper where government invoked national security). Indeed, one of the Supreme Court's landmark First Amendment decisions, *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943), overruled a decision issued only three years earlier because the Court had mistakenly allowed First Amendment freedoms to yield to a bare invocation of "national security." *Id.* at 640 (quoting *Minersville Sch. Dist. v. Gobitis*, 310 U.S. 586, 595 (1940)).

The panel's analysis is not only contrary to precedent but also would severely circumscribe—if not eliminate—constitutional protections against First Amendment retaliation. The government will always point to a non-retaliatory justification for its conduct. If merely claiming that dual motive at the time the government retaliates is enough to foreclose a retaliation claim, the First Amendment becomes nothing but a parchment barrier against retaliatory incursions on the freedom of speech.

**B.**    The panel's ruling is equally flawed if it is understood as an analysis of the factual record in this case. The causation determination in a First Amendment retaliation case—both at the prima facie stage and after the burden shifts to the government—is "purely a question of fact." *Eng*, 552 F.3d at 1072. That causation determination requires findings about the government's "subjective…decisions

made from documentary and testimonial evidence, both of which are best judged by a trier of fact." *Duffy v. Sarault*, 892 F.2d 139, 145 (1st Cir. 1989). As such, the district court's findings are subject to review only for clear error. Fed. R. Civ. P. 52(a)(6); *see Nicholson v. Bd. of Educ. Torrance Unified Sch. Dist.*, 682 F.2d 858, 864 (9th Cir. 1982); *Duffy*, 892 F.2d at 145-46; *Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 193 (4th Cir. 1994). And that standard applies even if the district court based its finding solely "on physical or documentary evidence or inferences from other facts." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985); *Nicholson*, 682 F.2d at 864 n.6.

The panel's analysis—which focused on "this record," what the government "has shown," and what the record "fairly indicate[s]," 148 F.4th at 654-55—failed to give the district court's factual findings the requisite deference. The district court's findings (GA 19-22) that the evidence supported a prima facie nexus between the Executive Order and Plaintiffs' protected activity and that the government had not rebutted that nexus were amply supported by the record. The panel erred to the extent it "undert[ook] to duplicate the role of the lower court" and reach a different conclusion simply because "it would have weighed the evidence differently" and "decided the case differently." *Anderson*, 470 U.S. at 573-74.

**C.**     The panel's analysis of the equities was also flawed, as it was based in part on a factual premise that turned out to be inaccurate. Initially after the President

issued the Executive Order, the Office of Personnel Management directed agencies not to terminate collective bargaining agreements until litigation had concluded. SA 136. The government relied on that instruction in this case and others over the legality of the Executive Order. *See, e.g.*, Dkt. 8.1 at 21-22; *NTEU v. Trump*, 2025 WL 1441563, at *1 (D.C. Cir. May 16, 2025). And the panel relied in part on that instruction in finding that the balance of equities weighed in favor of a stay. 148 F.4th at 656.

Contrary to that instruction, the government has now started to terminate collective bargaining agreements in the wake of the panel's stay decision. *See generally* Dkts. 36.1 & 36.2; OPM Director Scott Kupor, *Building Momentum Through Legal Wins* (Aug. 15, 2025), https://www.opm.gov/news/secrets-of-opm/building-momentum-through-legal-wins/ ("Last week the 9th Circuit Court of Appeals – certainly not known for its conservative values – rejected the unions' [First Amendment] claims and permitted the exempted federal agencies to comply with the executive order."); Eileen Sullivan, *Trump Orders Have Stripped Nearly Half a Million Federal Workers of Union Rights*, N.Y. Times (Sept. 1, 2025), https://www.nytimes.com/2025/09/01/us/politics/trumps-unions-federal-workers.html ("The termination of protections followed an Aug. 1 appeals court ruling on legal challenges to Mr. Trump's directive."). Following the panel's stay opinion, the government has terminated collective bargaining agreements with

14

Plaintiffs at many agencies, including the Department of Veterans Affairs, Environmental Protection Agency, Animal and Plant Health Inspection Service, and Food Safety and Inspection Service. Dkts. 36.1 & 36.2; *see also* Erich Wagner, *HHS the Latest to Cancel Union Contracts and Implement Trump's Order*, Gov't Exec. (Aug. 25, 2025), https://www.govexec.com/workforce/2025/08/hhs-latest-cancel-union-contracts-and-implement-trumps-order/407673/.

These subsequent developments establish that the panel balanced the equities based on incorrect facts. That error compounded the panel's faulty evaluation of the government's likelihood of prevailing on appeal.

## II.    The Panel's First Amendment Analysis Raises a Question of Exceptional Importance that Requires En Banc Consideration

As explained above, the panel's flawed analysis significantly weakens constitutional protections against government retaliation. By permitting the government to punish First Amendment activity as long as the government points to a contemporaneously articulated rationale that "fairly indicates" a permissible basis for its conduct, the panel has cleared a pathway for the President to target disfavored speech with impunity. On the panel's reasoning, it is difficult to imagine a successful First Amendment retaliation claim absent an admission by the government that retaliation was its sole motive. This would radically subvert First Amendment protections. Indeed, the stay decision has already given the government cover to

punish First Amendment activities, and it will undoubtedly embolden this administration in other contexts.[3]

When the Department of Veterans Affairs cancelled collective bargaining agreements five days after the panel issued the stay decision, for example, the Department gave no pretense that the cancellation was intended to promote national security. Instead, it claimed that termination would "make it easier for VA leaders to promote high-performing employees, hold poor performers accountable, and improve benefits and services to America's Veterans," and it criticized First Amendment activity by Plaintiffs AFGE, NFFE, and NNOC/NNU—specifically, their opposition to legislation favored by the Department. Dep't of Veterans Affs., *VA Terminates Union Contracts For Most Bargaining-Unit Employees* (Aug. 6, 2025), https://news.va.gov/press-room/va-terminates-union-contracts-for-most-bargaining-unit-employees/.

These actions have had tangible, real-world consequences for federal workers. For example, "[n]ew and expecting parents who work at Veterans Affairs are getting approved maternity and paternity leave canceled." Emily Peck, *Exclusive: VA*

---

[3] This Executive Order is only one of many punitive actions taken by this administration against individuals and organizations who engaged in First Amendment activity that the President disfavors. *See, e.g.*, *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President*, 784 F. Supp. 3d 127, 150-52 (D.D.C. 2025); *President & Fellows of Harvard Coll. v. DHS*, 2025 WL 1737493, at *14-17 (D. Mass. June 23, 2025).

*rescinds weeks of parental leave — even for some giving birth this week*, Axios (Aug. 15, 2025), https://www.axios.com/2025/08/15/va-maternity-leave-veterans-union. The affected employees "include people giving birth this week, or who just gave birth and are on maternity leave." *Id.* And parental leave is but one of the many types of valuable protections for federal workers obtained through union representation that the government now feels at liberty to repudiate. Moreover, apparently emboldened by the panel's stay decision, on August 28, 2025, the government excluded yet more agencies from Chapter 71—such as the National Weather Service and the Office of the Commissioner for Patents in the Patent and Trademark Office— and has begun to terminate collective bargaining agreements with unions representing workers at those agencies. *See supra* n.1; Chris Cameron, *Trump Moves to Strip More Federal Workers of Union Protections*, N.Y. Times (Aug. 29, 2025), https://www.nytimes.com/2025/08/29/us/politics/trump-federal-workers-union-protections.html.

The stay order accordingly carries severe repercussions for federal workers. Congress enshrined the right of federal workers to join unions and engage in collective bargaining because it concluded that "labor organizations and collective bargaining in the civil service are in the public interest." 5 U.S.C. § 7101(a). By permitting the Executive Order to go into effect, the panel's stay decision allows the government to exclude the vast majority of federal workers from the very protections

17

that Congress determined were in the public interest, and to do so in response to First Amendment speech.

The stay order also eliminates protections when federal workers need them most. The government has embarked on "an unprecedented attempted restructuring of the federal government and its operations." *AFGE v. Trump*, 139 F.4th 1020, 1028 (9th Cir. 2025), *injunction stayed*, 145 S.Ct. 2635 (July 8, 2025). According to one high-level official, federal workers are "viewed as the villain," and the goal is to put federal workers "in trauma" so that "[w]hen they wake up in the morning" they do "not want to go to work." Alice Herman, *Russell Vought: Trump appointee who wants federal workers to be 'in trauma,'* The Guardian (Feb. 10, 2025), https://www.theguardian.com/us-news/2025/feb/10/who-is-russell-vought-trump-office-of-management-and-budget. It is in these circumstances that federal workers most need the strength of collective action and where targeting protected speech will have its maximum chilling effect.

Indeed, the Executive Order threatens the very existence of some Plaintiffs. The ability of unions to negotiate and enforce collective bargaining agreements provides the primary impetus for workers to become members and pay dues. SA 131. The government's actions have left Plaintiffs and their affiliates unable to enforce the substantive and procedural protections that they have bargained for on behalf of their members at excluded agencies. SA 127-28, 144. Plaintiff AFGE, for

18

example, has announced that it will have to dramatically reduce its operating staff as a result of collapsing revenue. SA 131-33. And even if Plaintiffs can somehow stay afloat, because the Executive Order strips Plaintiffs of their essential functions, they will nonetheless cease to exist and function as labor organizations for their excluded federal workers.

The panel's stay decision has had and will continue to have serious impacts that threaten essential First Amendment freedoms. This Court should grant rehearing en banc and reinstate the district court's preliminary injunction.

## CONCLUSION

Plaintiffs respectfully request that the Court rehear en banc the panel's stay decision and decide the merits of the preliminary injunction appeal as well.

Dated: September 22, 2025

Respectfully submitted,

/s/ *Ramya Ravindran*
Abigail V. Carter
Ramya Ravindran
Lane M. Shadgett
J. Alexander Rowell
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street NW, Suite 1000
Washington, D.C. 20005
Tel: (202) 842-2600
Fax (202) 842-1888
acarter@bredhoff.com
rravindran@bredhoff.com
lshadgett@bredhoff.com
arowell@bredhoff.com

*Attorneys for Plaintiffs-Appellees*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  25-4014

I am the attorney or self-represented party.

**This brief contains**  4,170  **words,** including  0  words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◉ complies with the length limit designated by court order dated  August 25, 2025 .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  /s/ Ramya Ravindran  **Date**  September 22, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov