No. 25-4014

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

American Federation of Government Employees, AFL-CIO, et al.

Plaintiffs-Appellees,

vs.

Donald J. Trump, in his official capacity as President of the United States, et al.

Defendants-Appellants.

On Appeal From the United States District Court
for the Northern District of California

**Brief of the States of Minnesota, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Hawai'i, Illinois, Maine, Maryland, Massachusetts, Michigan, Nevada, New Jersey, New York, North Carolina, Oregon, Rhode Island, Vermont, Washington and Wisconsin *as Amici Curiae* in Support of Plaintiffs-Appellees.**

KEITH ELLISON
Attorney General
State of Minnesota

LIZ KRAMER*
Solicitor General

PAUL DIMICK
MADELEINE DEMEULES
Assistant Attorneys General

Office of the Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 757-1010
liz.kramer@ag.state.mn.us

*Admitted to the bar of this Court

(Additional Counsel Listed on Signature Page)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

IDENTITY AND INTERESTS OF AMICI CURIAE ...............................................1

ARGUMENT .....................................................................................3

I.   THE FIRST AMENDMENT MERITS OF THIS CASE ARE LEGAL ISSUES OF
     EXCEPTIONAL IMPORTANCE...............................................................4

II.  CONGRESS HAS ALREADY DETERMINED THAT PROTECTING THE LABOR
     RIGHTS OF FEDERAL EMPLOYEES UNDER THE FSLMRS IS IN THE PUBLIC
     INTEREST. .................................................................................5

III. DECADES OF EXPERIENCE ESTABLISH THAT CONGRESS WAS CORRECT IN
     ITS ASSESSMENT OF THE PUBLIC INTEREST THAT IS SERVED BY ROBUST
     LEGAL PROTECTIONS FOR FEDERAL LABOR ORGANIZATIONS. .........................9

CONCLUSION .................................................................................12

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Boardman v. Pac. Seafood Grp.*
  822 F.3d 1011 (9th Cir. 2016) .................................................................. 6

*City & Cnty. of S.F. v. Trump*
  897 F.3d 1225 (9th Cir. 2018) .................................................................. 8

*Golden Gate Rest. Ass'n v. City & Cnty. of S.F.*
  512 F.3d 1112 (9th Cir. 2008) .................................................................. 6

*Hernandez v. Sessions*
  872 F.3d 976 (9th Cir. 2017) ................................................................ 5, 6

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps.*
  585 U.S. 878 (2018) .............................................................................. 10

*King v. Burwell*
  576 U.S. 473 (2015) ................................................................................ 8

*Knevelbaard Dairies v. Kraft Foods, Inc.*
  232 F.3d 979 (9th Cir. 2000) .................................................................. 6

*Media Matters for Am. v. Paxton*
  138 F.4th 563 (D.C. Cir. 2025) .............................................................. 4

*Nken v. Holder*
  556 U.S. 418 (2009) ............................................................................ 3, 4

*Preminger v. Principi*
  422 F.3d 815 (9th Cir. 2005) .................................................................. 6

*Pursuing Am.'s Greatness v. Fed. Election Comm'n*
  831 F.3d 500 (D.C. Cir. 2016) .............................................................. 4

*Small v. Avanti Health Sys., LLC*
  661 F.3d 1180 (9th Cir. 2011) ............................................................ 2, 5

*Starbucks Corp. v. McKinney*
    602 U.S. 339 (2024) ........................................................... 6, 7

*Tri-Cnty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*
    565 Fed. App'x 477 (6th Cir. 2012)................................... 7

*Virginian R. Co. v. Sys. Fed. No. 40*
    300 U.S. 515 (1937)........................................................... 6, 7

*W. Va. State Bd. of Educ. v. Barnette*
    319 U.S. 624 (1943) .......................................................... 3

*Wesberry v. Sanders*
    376 U.S. 1 (1964) .............................................................. 8

*Winter v. Nat. Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ............................................................. 3, 4

**Federal Statutes**

5 U.S.C. § 7101 ....................................................................... 1

**Federal Rules**

Fed. R. App. P. 29(a)(2)......................................................... 1

Fed. R. App. P. 40(b)(2)(D) .................................................. 4

**Other Authorities**

11A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2948.4, at 207 (2d ed. 1995) ...................................... 6

Executive Order 14251, *Exclusions from Federal Labor-Management Relations Programs*
    90 Fed Reg. 14553 (Apr. 3, 2025) ................................... 1

Dayne Lee, *Bundling "Alt-Labor": How Policy Reform Can Facilitate Political Organization*
    51 Harv. C.R.-C.L. L. Rev. 509 (2016) ...................... 10, 11

Carole Pateman, *Participatory Democracy Revisited*, 10 Persps. on Pols.
(Issue 1) 7, 10 (2012) ................................................................ 11

Nicholas Handler, *Separation of Powers by Contract: How Collective Bargaining Reshapes Presidential Power*
99 N.Y.U. L. Rev. 45 (2024) ...................................................... 11, 12

Benjamin Sachs, *The Unbundled Union: Politics Without Collective Bargaining*
123 Yale L. J. 148 (2013)........................................................... 10

The White House, Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements
(Mar. 27, 2025) ......................................................................... 3

Kenneth G. Dau-Schmidt & Mohammad Khan, *Undermining or Promoting Democratic Government? An Economic and Empirical Analysis of the Two Views of Public Sector Collective Bargaining in American Law*
14 Nev. L. J. 414 (2014) ............................................................ 10

v

## IDENTITY AND INTERESTS OF AMICI CURIAE

The State of Minnesota, represented by and through its Attorney General, and the States of Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Hawai'i, Illinois, Maine, Maryland, Massachusetts, Michigan, Nevada, New Jersey, New York, North Carolina, Oregon, Rhode Island, Vermont, Washington, and Wisconsin ("Amici States"), respectfully submit this brief under Federal Rule of Appellate Procedure 29(a)(2). Amici States submit this brief in support of Plaintiffs-Appellees and in conjunction with this Court's upcoming vote regarding en banc review of an order staying a preliminary injunction of Executive Order 14251 ("Challenged EO"), which Defendants-Appellants ("United States") have promulgated and implemented. *See Exclusions from Federal Labor-Management Relations Programs*, 90 Fed Reg. 14553 (Apr. 3, 2025). This executive order removes an unprecedented number of federal employees from coverage under the Federal Service Labor-Management Relations Statute ("FSLMRS"). 5 U.S.C. § 7101.

Through their affiliated councils and local unions, Plaintiffs-Appellees collectively represent over one million federal employees working in all 50 states and the District of Columbia. Amici States hold a strong interest in ensuring that Plaintiffs-Appellees' members retain their collective bargaining rights and union representation. Indeed, many state employees across the country, including

employees in many of the undersigned states, are represented by unions. Amici States thus recognize the importance of ensuring that public-sector employees have robust representation and workplace protections to ensure the efficiency and quality of the services that they provide.

In much the same way, federal employees living in Amici States depend on Plaintiffs-Appellees to negotiate critical workplace protections, ranging from contractually guaranteed benefits like parental leave to limitations on reduction-in-force actions. *Cf. Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1192 (9th Cir. 2011) (recognizing the numerous economic and non-economic benefits of union representation). These dedicated federal employees work for over 40 executive departments, agencies, and subdivisions—including the Department of Justice, Centers for Disease Control and Prevention, and Environmental Protection Agency—all of which Amici States rely on for vital federal services and programs. Congress long ago determined that the best way to improve employee performance and ensure a competent civil service is to protect "the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing." 5 U.S.C. § 7101(a)(1). The Challenged EO's elimination of those rights for nearly two-thirds of the federal workforce inflicts concrete harm on Amici States by reducing the efficiency of federal agencies and the essential services they provide to Amici States and their residents.

## ARGUMENT

"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Yet the Challenged EO does precisely that. *See* The White House, Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements (Mar. 27, 2025) ("Fact Sheet") (sanctioning Appellees and their members for "'fighting back' against Trump" and challenging his administration's policies).

In addition, the Challenged EO abrogates longstanding statutory labor rights en masse. (*See, e.g.*, Compl. ¶¶ 188-94 (tabulating over 800,000 federal employees whom Plaintiffs-Appellees represent at federal agencies impacted by the Challenged EO)). The speed and scale at which the Challenged EO has attempted to dismantle federal labor unions undermines the express determination of public interest that Congress memorialized in the FSLMRS. 5 U.S.C. § 7101(a)(2). The public interest is a component of the legal test for preliminary injunctive relief, so this aspect of the Challenged EO is critical to this Court's determination of whether to grant rehearing en banc. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (preliminary injunctions); *Nken v. Holder*, 556 U.S. 418, 425-26 (2009) (stays pending appeal).

Amici States respectfully submit this brief to highlight the matters of public interest at stake in this appeal, and why these matters make preliminary relief vital for Plaintiffs-Appellees during the pendency of this litigation. Any plaintiff that seeks a preliminary injunction must establish that an injunction "is in the public interest." *Winter*, 555 U.S. at 20. Likewise, any party that requests a stay of preliminary relief pending appeal must address the public interest. *See Nken*, 556 U.S. at 425-26 (noting "substantial overlap" between factors governing grant of preliminary injunction and those governing grant of a stay pending appeal).

The panel's erroneous decision to stay the preliminary injunction entered below pending appeal implicates issues of exceptional importance that this Court should rehear en banc. Fed. R. App. P. 40(b)(2)(D).

## I.   THE FIRST AMENDMENT MERITS OF THIS CASE ARE LEGAL ISSUES OF EXCEPTIONAL IMPORTANCE.

In this case, the public interest weighs heavily in favor of granting Plaintiffs-Appellees' request for preliminary relief, as the district court correctly recognized. The FSLMRS labor rights at issue in this appeal intersect directly with the First Amendment rights of Plaintiffs-Appellees and the hundreds of thousands of federal workers they represent. There is "always a strong public interest in the exercise of free speech rights otherwise abridged by an unconstitutional government action." *Media Matters for Am. v. Paxton*, 138 F.4th 563, 585 (D.C. Cir. 2025) (quoting *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir.

4

2016) (affirming preliminary injunction granted to media watchdog organization that alleged it was targeted with an investigation as retaliation for protected speech)); *see also Small*, 661 F.3d at 1187 (securing compliance with the law is always in the public interest).

As Amici States discussed in their amicus brief before the merits panel, the United States' position on how the governing *Mt. Healthy* test should be applied to Plaintiffs-Appellees' First Amendment retaliation claims represents a departure from well-established law and principles of justice. (*See generally* Br. of Amici States, Dkt. Entry 50.2). The proper resolution of these claims implicates core First Amendment principles and, in turn, issues of exceptional importance that merit en banc review.

## II.  CONGRESS HAS ALREADY DETERMINED THAT PROTECTING THE LABOR RIGHTS OF FEDERAL EMPLOYEES UNDER THE FSLMRS IS IN THE PUBLIC INTEREST.

As a general proposition, "compliance with the law," including the Constitution, "is in the public interest." *Small*, 661 F.3d at 1187 (affirming grant of preliminary injunction in unfair labor practice matter). When the impact of preliminary relief "reaches beyond the parties," the public interest is relevant to a court's decision about whether to grant such relief. *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017). Impacts of preliminary relief on the public may take many forms, from the public's collective stake in protecting and upholding the

Constitution, to the public's interest in the "efficient allocation" of government resources. *Id.* (citing *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) and *Golden Gate Rest. Ass'n v. City & Cnty. of S.F.*, 512 F.3d 1112, 1125 (9th Cir. 2008)). Here, that inquiry implicates whether this case presents issues of exceptional importance.

Key to this Court's consideration of the public interest is Congress's recognition of the same in the FSLMRS. It is well-established that Congress may memorialize its findings regarding the public interest "in the form of a statute." *Golden Gate Rest. Ass'n*, 512 F.3d at 1126-27 (citing 11A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2948.4, at 207 (2d ed. 1995)). Thus, when Congress has considered the public's interest in a particular issue and legislated accordingly, Congress's memorialization of the public interest is entitled to some weight. *See id*; *see also Virginian R. Co. v. Sys. Fed. No. 40*, 300 U.S. 515, 552 (1937) ("The fact that Congress has indicated its purpose . . . is in itself a declaration of public interest and policy which should be persuasive in inducing courts to give relief."); *Starbucks Corp. v. McKinney*, 602 U.S. 339, 362 (2024) (Jackson, J., concurring) (same)).

This principle transcends labor relations law and finds purchase in other domains. *See, e.g.*, *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (citing *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 988

(9th Cir. 2000) (looking to statutory purposes of state and federal antitrust laws to determine public interest in antitrust suit)); *Tri-Cnty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*, 565 Fed. App'x 477, 484 (6th Cir. 2012) (declining to "second-guess" the legislature when franchise statute at issue "represent[ed] the legislature's judgment").

In this Court's analysis of the exceptional importance of this case and the proper resolution of the preliminary injunction and stay request, the plain text of the FSLMRS reflects where the public interest lies. When Congress passed the FLMRS in 1978, it made an express finding that "the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them safeguards the public interest." 5 U.S.C. § 7101(a)(1)(A). This statutory text reflects Congress's assessment of the public interest, and strongly supports the district court's assessment of the same in this case and its issuance of a preliminary injunction. *Virginian R. Co.*, 300 U.S. at 552; *Starbucks*, 602 U.S. at 362 (Jackson, J., concurring). And as discussed below, Congress's judgment is also consistent with Amici States' experiences.

The United States improperly second guesses Congress's judgment, which is supported by the experience of public sector employees over decades and across multiple presidential administrations. Rather than defer to Congress's articulation of

7

the public interest, the United States would have this Court substitute Congress's assessment of the public interest for the policy preference of the Executive.

The United States' request for a stay is also troubling because it conflicts with well-settled understandings of the legislative and executive branches' respective functions. In particular, our constitutional order assigns Congress the responsibility for determining and, through democratically-enacted legislation, articulating the public's interest. *Cf. City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1242 (9th Cir. 2018) (citing *King v. Burwell*, 576 U.S. 473, 485 (2015)). Compared to the executive, Congress is generally the more politically representative branch. *See, e.g.*, *Wesberry v. Sanders*, 376 U.S. 1, 9-17 (1964) (tracing constitutional roots of representation in Congress). At a minimum, Congress's experience and study-backed statement of the public's interest in federal labor relations under the FSLMRS is more deserving of this Court's credence than a single (and retaliatory) executive order.

The panel's order granting the United States' request for a stay did not address the congressional statement of public interest set forth in the FSLMRS. (Order Granting Mot. for Stay, at *15, Dkt. Entry 32.1.) By granting rehearing en banc on the United States' request for a stay, this Court can give proper consideration to the FSLMRS's statutory statement of public interest. This Court should grant rehearing

8

en banc so the exceptionally important values embodied in the FSLMRS are not so readily dismissed.

### III.  DECADES OF EXPERIENCE ESTABLISH THAT CONGRESS WAS CORRECT IN ITS ASSESSMENT OF THE PUBLIC INTEREST THAT IS SERVED BY ROBUST LEGAL PROTECTIONS FOR FEDERAL LABOR ORGANIZATIONS.

In the five decades since Congress passed the FSLMRS in 1978, numerous studies have documented the positive effects of robust legal protections for public labor organizations. Many key findings have emerged that show how important it is to preserve public labor organizations and the laws that protect them, and thus supports the conclusion that the public interest in this case favors preliminary relief for Plaintiffs-Appellees.

These empirical data support Congress's view of the public interest and leave no doubt where the public interest points on the issue of preliminary relief in this case. Like the separation-of-powers concerns discussed above, the strength of the scholarly work on public labor organizations demonstrates why the public interest factor in this Court's preliminary relief analysis makes this case appropriate for rehearing en banc. In particular, research documents at least four manners in which public labor organizations promote and protect the values of representative democracy.

First, labor unions advance the cause of democracy by providing public workers—who comprise many individuals and much of the federal workforce—a

9

workable method to "represent their interests" to legislators and their employers. Kenneth G. Dau-Schmidt & Mohammad Khan, *Undermining or Promoting Democratic Government? An Economic and Empirical Analysis of the Two Views of Public Sector Collective Bargaining in American Law*, 14 Nev. L. J. 414, 431 (2014). Public-sector labor organizations are key voices in many policy debates, as public workers "have direct experience with the benefits their services provide and special expertise and experience on how those services can best be provided and efficiently administered." *Id.*

Second, public-sector labor unions are themselves "extraordinarily effective incubators of political participation and organization," especially for groups traditionally excluded from the political process. Dayne Lee, *Bundling "Alt-Labor": How Policy Reform Can Facilitate Political Organization*, 51 Harv. C.R.-C.L. L. Rev. 509, 513 (2016). Professor Benjamin Sachs describes labor law as "the legal regime that has most successfully facilitated lower- and middle-class political organizing." Benjamin Sachs, *The Unbundled Union: Politics Without Collective Bargaining*, 123 Yale L. J. 148, 151-52 (2013). Noting that unions have taken a variety of political positions over the years, Professor Sachs contends that, more than anything, labor organizations "helped ensure that the government was responsive to the actual preferences of the poor and middle class." *Id.* at 152-53; *see also, e.g.*, *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 585 U.S. 878, 913-14 (2018)

(observing that unions "speak out in collective bargaining" on topics of "profound value and concern to the public"—speech that "occupies the highest rung of the hierarchy of First Amendment values" (citation modified)).

Third, public-sector unions support their members' participation in the democratic process by modeling and facilitating democracy in a proximate and accessible fashion. Unions themselves function as miniature democracies, allowing workers to choose their own representatives and union members to elect their own stewards, local representatives, and national leaders. *See* Lee, *supra*, at 513; *cf.* Carole Pateman, *Participatory Democracy Revisited*, 10 Persps. on Pols. (Issue 1) 7, 10 (2012) (discussing "participatory democracy" theory of government, which emphasizes the need for "opportunities for individuals to participate in decision-making in their everyday lives as well as in the wider political system"). Unions also provide opportunities for political education and participation, building on those that naturally occur in many workplaces. *See* Lee, *supra*, at 514.

Finally, and as relevant here, public-sector unions serve as an important and effective check on executive power and thereby safeguard a key value of our constitutional order. As one scholar put it, when "the President interferes with the operation of the civil service in ways that arguably subvert the will of Congress, litigation by unions allows courts to intervene." Nicholas Handler, *Separation of Powers by Contract: How Collective Bargaining Reshapes Presidential Power*,

11

99 N.Y.U. L. Rev. 45, 84 (2024) (describing federal labor unions as "civil servant alarms"). Plaintiffs-Appellees have sounded the alarm here, and this Court should heed their call.

Public-sector labor organizations play a critical role in our democracy. This important function and its impact on the public interest factor in this case is an issue that must be acknowledged and analyzed in this Court's assessment of preliminary relief. Granting rehearing en banc will ensure that this Court can properly consider this aspect of the public interest factor in its preliminary relief analysis.

## CONCLUSION

The public interest at stake in this appeal and Plaintiffs-Appellees' request for preliminary relief cannot be overstated. Ensuring that this issue is fully and properly ventilated is a matter of exceptional importance that merits this Court's full review, and therefore justifies rehearing en banc.

*Signature block on following page.*

12

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

s/ Liz Kramer
LIZ KRAMER
Solicitor General

PAUL DIMICK
MADELEINE DEMEULES
Assistant Attorneys General

Office of the Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 757-1010
liz.kramer@ag.state.mn.us

On behalf of:

KRISTIN K. MAYES
*Attorney General*
*State of Arizona*
2005 N. Central Ave.
Phoenix, AZ 85004

ROB BONTA
*Attorney General*
*State of California*
1515 Clay Street
Oakland, CA 94612

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

13

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 Sixth Street, NW
Washington, D.C. 20001

ANNE E. LOPEZ
*Attorney General*
*State of Hawaiʻi*
425 Queen Street
Honolulu, HI 96813

KWAME RAOUL
*Attorney General*
*State of Illinois*
115 South LaSalle Street
Chicago, IL 60603

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 12224

JEFF JACKSON
*Attorney General*
*State of North Carolina*
114 W. Edenton Street
Raleigh, NC 27603

DAN RAYFIELD
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

JOSHUA L. KAUL
*Attorney General*
*State of Wisconsin*
17 W. Main Street
Madison, WI 53703

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

14

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place, 20th Floor
Boston, MA 02108

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number 25-4014**

I am the attorney or self-represented party. **This brief contains 2,746 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

X̲ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ☐ it is a joint brief submitted by separately represented parties.

    ☐ a party or parties are filing a single brief in response to multiple briefs.

    ☐ a party or parties are filing a single brief in response to a longer joint brief.

    ☐ complies with the length limit designated by court order dated.

    ☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

16

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2025, an electronic copy of the foregoing brief was filed with the Clerk of Court using the ECF system and thereby served upon all counsel appearing in this case.

s/ Liz Kramer
LIZ KRAMER
Solicitor General

PAUL DIMICK
MADELEINE DEMEULES
Assistant Attorneys General

Office of the Attorney General
State of Minnesota