No. 25-4014

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO
*et al.*,

*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*, *et al.*,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the Northern District of California

———————————

## APPELLANTS' OPPOSITION TO REHEARING EN BANC

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MELISSA N. PATTERSON
JOSHUA M. KOPPEL
BENJAMIN T. TAKEMOTO
TYLER J. BECKER
  *Attorneys*
  *Civil Division, Room 7258*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5364*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION .............................................................................. 1

STATEMENT ..................................................................................... 3

ARGUMENT ...................................................................................... 8

CONCLUSION ................................................................................. 17

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*AFGE v. Reagan,*
  870 F.2d 723 (D.C. Cir. 1989) ............................................................... 10, 13

*AFGE v. Trump,*
  929 F.3d 748 (D.C. Cir. 2019) ..................................................................... 15

*AFGE v. Trump*:
  148 F.4th 648 (9th Cir. 2025) ................................... 1, 2, 6, 7, 8, 10, 11, 12, 13, 14, 15
  No. 25-cv-03070, 2025 WL 1755442 (N.D. Cal. June 24, 2025) .......................... 6, 7

*AFSA v. Trump*:
  No. 25-5184, 2025 WL 1742853 (D.C. Cir. June 20, 2025) .................. 1, 6, 7, 10, 14
  783 F. Supp. 3d 248 (D.D.C. 2025) ................................................................ 6

*Arizona Students' Ass'n v. Arizona Bd. of Regents,*
  824 F.3d 858 (9th Cir. 2016) ......................................................................... 9

*Atonio v. Wards Cove Packing Co.,*
  810 F.2d 1477 (9th Cir. 1987) .................................................................... 2, 8

*Boquist v. Courtney,*
  32 F.4th 764 (9th Cir. 2022) .................................................... 9, 10, 12, 15

*California Chamber of Com. v. Council for Educ. & Rsch. on Toxics,*
  29 F.4th 468 (9th Cir. 2022) ....................................................................... 15

*Castro v. United States,*
  540 U.S. 375 (2003) .................................................................................... 3

*Federal Educ. Ass'n v. Trump,*
  No. 25-cv-1362, 2025 WL 2355747 (D.D.C. Aug. 14, 2025) ..................................... 6

*Hartman v. Moore,*
  547 U.S. 250 (2006) .................................................................................... 9

*Newsom v. Trump,*
  141 F.4th 1032 (9th Cir. 2025) ..................................................................... 15

*Nieves v. Bartlett,*
  587 U.S. 391 (2019) ................................................................................... 12

*NTEU v. Trump*:
   No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) .......... 1, 2, 6, 7, 13-14, 14
   780 F. Supp. 3d 237 (D.D.C. 2025) ....................................................... 6

*O'Brien v. Welty*,
   818 F.3d 920 (9th Cir. 2016) ................................................................ 9

*Reichle v. Howards*,
   566 U.S. 658 (2012) ............................................................................ 12

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ............................................................................ 14

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ...................................................................... 11, 13

*U.S. Dep't of Com. Pat. & Trademark Off. & Pat. Off. Pro. Ass'n*,
   60 F.L.R.A. 869 (2005) ...................................................................... 14

*United States v. Sineneng-Smith*,
   590 U.S. 371 (2020) ............................................................................. 2

## U.S. Constitution:

Amend. I ................................................................................................. 9

## Statutes:

Civil Service Reform Act of 1978:
   5 U.S.C. §§ 7101–7135 ........................................................................ 3
   5 U.S.C. § 7102(2) ................................................................................. 3
   5 U.S.C. § 7103(a)(3) ............................................................................ 3
   5 U.S.C. § 7103(b)(1) ................................................................... 1, 3, 12
   5 U.S.C. § 7105(a)(2) ........................................................................... 15
   5 U.S.C. § 7106 ..................................................................................... 3
   5 U.S.C. § 7114 ..................................................................................... 3
   5 U.S.C. § 7121 ................................................................................... 12
   5 U.S.C. § 7123(a) .............................................................................. 15

**Regulatory Materials:**

Exec. Order No. 12,171,
    44 Fed. Reg. 66,565 (Nov. 20, 1979) ........................................................ 3, 4

Exec. Order No. 13,039,
    62 Fed. Reg. 12,529 (Mar. 14, 1997) .................................................... 4

Exec. Order No. 13,480,
    73 Fed. Reg. 73,991 (Dec. 4, 2008) ..................................................... 4

Exec. Order No. 14,251,
    90 Fed. Reg. 14,553 (Apr. 3, 2025) ..................................................... 4

**Rules:**

Fed. R. App. P. 40 ......................................................................................... 2

Fed. R. App. P. 40(a) .................................................................................... 8

Fed. R. App. P. 40(b)(2) ............................................................................... 8

**Other Authority:**

Memorandum from Charles Ezell, Acting Dir., U.S. Off. of Pers.
    Mgmt., to Heads and Acting Heads of Departments and
    Agencies, *Guidance on Executive Order* (Mar. 27, 2025),
    https://perma.cc/QH4A-MQ9F .......................................................... 4, 5

iv

## INTRODUCTION

This case involves a challenge to the President's exclusion of certain agencies from the Federal Service Labor–Management Relations Statute (FSLMRS). That statute, which grants members of the civil service the right to unionize and bargain collectively, also authorizes the President to exclude agencies from coverage "if the President determines" that national security so requires. 5 U.S.C. § 7103(b)(1).

The district court in this case preliminarily enjoined the President from exercising this important power that Congress entrusted to the Executive Branch. But a unanimous panel of this Court (Owens, Bade, Bress, JJ.)—consistent with two D.C. Circuit decisions staying similar preliminary injunctions against the same executive order, *see American Foreign Serv. Ass'n* (*AFSA*) *v. Trump*, No. 25-5184, 2025 WL 1742853 (D.C. Cir. June 20, 2025) (per curiam); *National Treasury Emps. Union* (*NTEU*) *v. Trump*, No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) (per curiam)— issued a considered order staying the preliminary injunction pending appeal. *See American Fed'n of Gov't Emps.* (*AFGE*) *v. Trump*, 148 F.4th 648 (9th Cir. 2025) (per curiam). Plaintiffs did not seek rehearing en banc, and merits briefing was complete as of September 12, 2025.

Nevertheless, more than three weeks after the panel stayed the injunction and two weeks before merits briefing finished, the Court *sua sponte* directed the parties "to file simultaneous briefs setting forth their respective positions on whether the case should be reheard en banc." Order (Aug. 25, 2025). As set out below, there is no basis

for rehearing. The panel's unanimous stay decision not only satisfies none of the en banc criteria set out in Rule 40 of the Federal Rules of Appellate Procedure, the decision also is entirely correct in concluding that plaintiffs are unlikely to succeed on their First Amendment–retaliation claim. As the panel explained after hearing oral argument on the government's stay motion, "[o]n its face, the [Executive] Order does not express any retaliatory animus," instead conveying "the President's determination that the excluded agencies have primary functions implicating national security and cannot be subjected to the FSLMRS consistent with national security." *AFGE*, 148 F.4th at 655. And the extrinsic evidence on which plaintiffs rely only confirms "the President's focus on national security." *See id.* The panel also correctly concluded that the equities favored the government because an injunction that "ties the government's hands … in the national security context" imposes far greater harm than plaintiffs' alleged bargaining-power and pecuniary injuries, which are speculative or reparable. *See id.* at 656 (alteration in original) (quoting *NTEU*, 2025 WL 1441563, at *2).

Were there any doubt that rehearing is unwarranted, it is resolved by plaintiffs' failure to request rehearing in the weeks after the panel's stay ruling. En banc review is "extraordinary," *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1479 (9th Cir. 1987) (en banc) (quotation omitted), and en banc review of interlocutory stay decisions is even more unusual. "[O]ur system 'is designed around the premise that [the parties] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020)

(quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment)). Plaintiffs' own litigation decisions underscore that rehearing en banc is unwarranted.

## STATEMENT

1.      Congress enacted the FSLMRS as part of the Civil Service Reform Act of 1978. *See* 5 U.S.C. §§ 7101–7135. The FSLMRS grants some federal employees collective-bargaining rights, requiring that unions and federal agencies negotiate over certain matters. *Id.* §§ 7102(2), 7106, 7114. It also exempts several federal agencies from coverage, including the Government Accountability Office, Tennessee Valley Authority, FBI, and CIA. *Id.* § 7103(a)(3). Additionally, it provides:

> (1) The President may issue an order excluding any agency or subdivision thereof from coverage under this chapter if the President determines that—
>
> (A) the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, and
>
> (B) the provisions of this chapter cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations.

*Id.* § 7103(b)(1).

Shortly after the FSLMRS's enactment, President Carter issued an executive order excluding more than 45 agencies or subdivisions from coverage, precluding their employees from collective bargaining. Exec. Order No. 12,171, 44 Fed. Reg. 66,565 (Nov. 20, 1979). Those agencies included, *inter alia*, subdivisions of the

3

Department of Treasury, Department of Defense, Department of Justice, Department of Energy, General Services Administration, and Agency for International Development. *Id.* § 1–2, 44 Fed. Reg. at 66,565–66. Every President since, except President Biden, has issued similar executive orders expanding that list in response to changing circumstances and agencies' evolving investigative and national-security responsibilities. *E.g.*, Exec. Order No. 13,480, 73 Fed. Reg. 73,991 (Dec. 4, 2008); Exec. Order No. 13,039, 62 Fed. Reg. 12,529 (Mar. 14, 1997).

**2.**     In March 2025, President Trump issued another such executive order, determining that certain agencies and subdivisions have "as a primary function intelligence, counterintelligence, investigative, or national security work" and that the FSLMRS "cannot be applied to th[o]se agencies and agency subdivisions in a manner consistent with national security requirements and considerations." Exec. Order No. 14,251, §§ 1–2, 90 Fed. Reg. 14,553, 14,553–55 (Apr. 3, 2025).

The same day, the Office of Personnel Management (OPM) issued guidance to federal agencies. Memorandum from Charles Ezell, Acting Dir., U.S. Off. of Pers. Mgmt., to Heads and Acting Heads of Departments and Agencies, *Guidance on Executive Order* (Mar. 27, 2025), https://perma.cc/QH4A-MQ9F (OPM Guidance). OPM explained that "covered agencies and subdivisions are no longer subject to the collective-bargaining requirements" of the FSLMRS. OPM Guidance 3. OPM advised agencies to "consult with their General Counsels as to how to implement" the order. *Id.*

4

The OPM guidance identified several ways in which exclusion from the FSLMRS could improve agency functions. OPM explained that collective-bargaining agreements "often create procedural impediments to separating poor performers beyond those required by statute or regulation," and covered agencies and subdivisions would have a freer hand to "separate employees for unacceptable performance in appropriate cases." OPM Guidance 3–4. The guidance also emphasized that covered agencies could "eliminate waste, bloat, and insularity" by conducting reductions in force where appropriate, ordering employees to return to in-person work, and ensuring that agency resources are used for agency, not union, business. OPM Guidance 5–6. The White House also posted on its website a "Fact Sheet" similarly explaining how excluding national-security agencies and subdivisions from the FSLMRS could improve agency functions, noting that "obstruct[ion of] agency management … is dangerous in agencies with national security responsibilities." ER-162–63. The fact sheet also pointed out that certain unions have filed excessive grievances to accomplish such obstruction, including 70 grievances at the Department of Veterans Affairs (VA) since the inauguration of President Trump. ER-163.

**3.**     Many designated agencies and subdivisions have collective-bargaining agreements with employee unions. Some federal labor unions, including plaintiffs, have filed actions against the President, OPM, and various designated agencies seeking to enjoin implementation of the executive order. In four cases, including this

5

case, district courts have issued the requested preliminary injunctions. *See Federal Educ. Ass'n v. Trump*, No. 25-cv-1362, 2025 WL 2355747 (D.D.C. Aug. 14, 2025); *AFGE v. Trump*, No. 25-cv-03070, 2025 WL 1755442 (N.D. Cal. June 24, 2025); *AFSA v. Trump*, 783 F. Supp. 3d 248 (D.D.C. 2025); *NTEU v. Trump*, 780 F. Supp. 3d 237 (D.D.C. 2025). In three cases, including this one, the court of appeals stayed the preliminary injunctions pending appeal. *See AFGE v. Trump*, 148 F.4th 648 (9th Cir. 2025) (per curiam); *AFSA v. Trump*, No. 25-5184, 2025 WL 1742853 (D.C. Cir. June 20, 2025) (per curiam); *NTEU v. Trump*, No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) (per curiam). In the fourth (*Federal Education Association*), the government's motion to stay the preliminary injunction became fully briefed on September 9, 2025.

The merits in each appeal have varied, but every court of appeals that has considered the merits has concluded that the plaintiffs were unlikely to succeed. The D.C. Circuit concluded that an *ultra vires* claim was unlikely to succeed. *See AFSA*, 2025 WL 1742853, at *2–3. And the panel in this case concluded that plaintiffs' First Amendment–retaliation claim, the only claim that the district court considered, was unlikely to succeed. *See AFGE*, 148 F.4th at 654–55. Specifically, the panel reasoned that "[e]ven assuming that Plaintiffs have made out a prima facie claim of retaliation, on this record the government has shown that the President would have taken the same action even in the absence of the protected conduct." *Id.* The panel noted that "[o]n its face, the Order does not express any retaliatory animus" but rather "the

6

President's determination that the excluded agencies have primary functions implicating national security and cannot be subjected to the FSLMRS consistent with national security." *Id.* at 655. The panel also determined that, even if it is appropriate to look beyond the facial neutrality of the executive order, plaintiffs' asserted evidence of retaliation "taken as a whole, also demonstrates the President's focus on national security." *See id.*

All three panels across two circuits that have considered preliminary injunctions against the executive order have concluded that the equities favor the government. *See AFGE*, 148 F.4th at 655–56; *AFSA*, 2025 WL 1742853, at *3; *NTEU*, 2025 WL 1441563, at *1–3. The panel in this case determined that the government "established a likelihood that it will suffer irreparable harm absent a stay," reasoning that "the injunction 'ties the government's hands … in the national security context'" and pointing to "supporting declarations [that] reinforce [the government's] assertions of irreparable harm." *AFGE*, 148 F.4th at 655–56 (first alteration in original) (quoting *NTEU*, 2025 WL 1441563, at *2). The panel also opined that plaintiffs' harms are either speculative, as in the case of alleged "'weakened support for unions,'" or reparable: "any terminated agreements can be reinstated if Plaintiffs ultimately prevail" and "paused administration of dues collection can be addressed by voluntary dues payment in the interim and by monetary damages at the end of litigation." *Id.* at 656 (quoting *AFGE*, 2025 WL 1755442, at *14).

7

The *AFSA* and *NTEU* plaintiffs sought rehearing en banc, and the D.C. Circuit denied both requests. The plaintiffs in this case did not seek rehearing en banc before this Court *sua sponte* requested briefing on the issue.

## ARGUMENT

Rehearing en banc is "extraordinary," *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1479 (9th Cir. 1987) (en banc) (quotation omitted), and "not favored," Fed. R. App. P. 40(a); rehearing of an interlocutory stay decision is even more unusual. The panel's stay decision is correct, and beyond that, the usual criteria governing en banc review are plainly not satisfied here. The stay decision does not conflict with a decision of other courts but rather accords with two D.C. Circuit decisions. *See AFGE v. Trump*, 148 F.4th 648, 654 n.1 (9th Cir. 2025) (per curiam) (noting the consistency). And an interlocutory decision simply preserving the President's discretion to exclude agencies from FSLMRS coverage for national-security reasons hardly presents a question of exceptional importance. Beyond that, plaintiffs did not seek rehearing, and merits briefing is complete. There is accordingly no basis for rehearing en banc.

**I.**    The panel correctly stayed the preliminary injunction. Far from conflicting with any other court of appeals or the Supreme Court decision, *see* Fed. R. App. P. 40(b)(2), the panel's analysis faithfully applied the limits the Supreme Court has announced on second-guessing the Executive's national-security determinations.

**A.**    The panel cogently explained why, under the precedent of this Court and other courts, plaintiffs are unlikely to succeed on their First Amendment–retaliation claim.

The First Amendment provides, "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. This includes, "as a general matter," a prohibition on "government officials from subjecting an individual to retaliatory actions … for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To establish a *prima facie* retaliation claim, the plaintiff must show that: "(1) [the plaintiff] engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (quoting *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016)).

Showing such a motivating factor does not end the analysis; rather, it shifts "the burden … to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of." *Boquist v. Courtney*, 32 F.4th 764, 778 (9th Cir. 2022) (quoting *Hartman*, 547 U.S. at 260). Where "retaliation was not the *but-for cause* of the [adverse action], the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." *Id.* (alteration in original) (emphasis added) (quoting *Hartman*, 547 U.S. at 260). Thus, "if the government officials would

9

have taken the same adverse action even in the absence of their … retaliatory motive arising from the plaintiff's speech, … there was no violation of the plaintiff's constitutional rights." *Id.*

The stay panel correctly concluded that, setting aside whether plaintiffs had established a *prima facie* case (another basis upon which plaintiffs are unlikely to succeed, which the government pressed in its motion to stay and merits briefing), "on this record the government has shown that the President would have taken the same action even in the absence of the protected conduct." *AFGE*, 148 F.4th at 654–55. The panel correctly focused on the executive order, which, "[o]n its face … does not express any retaliatory animus." *Id.* at 655. Courts have consistently held that presidential determinations under § 7103(b)(1), which involve congressionally authorized national-security determinations, are entitled to a strong presumption of regularity and should be subject to limited judicial review, consistent with the panel's approach. *See AFGE v. Reagan*, 870 F.2d 723, 728 (D.C. Cir. 1989) (reversing a judgment against President Reagan's exclusion order without questioning the President's findings, noting that "[t]he Act does not itself require or even suggest that any finding be reproduced in the order"); *see also AFSA v. Trump*, No. 25-5184, 2025 WL 1742853, at *3 (D.C. Cir. June 20, 2025) (per curiam) (staying a preliminary injunction against this executive order based on the court's general observation that the State Department is involved in national security, noting that "[a] more 'searching inquiry' than this would be 'inconsistent with the broad statutory text and the

10

deference traditionally accorded the President in this sphere'" (quoting *Trump v. Hawaii*, 585 U.S. 667, 686 (2018))).

The government maintains that courts should not consider extrinsic evidence when evaluating the propriety of the President's national-security determinations, but the panel avoided any doubts on this score by correctly concluding that even "assum[ing] for present purposes that 'it may be appropriate' to look 'beyond the facial neutrality of the order,'" the primary evidence on which plaintiffs rely, "the Fact Sheet, taken as a whole, also demonstrates the President's focus on national security." *AFGE*, 148 F.4th at 655 (quoting *Trump*, 585 U.S. at 704). As the panel observed, the fact sheet "explains that the excluded agencies and subdivisions serve national security in areas including national defense, border security, foreign relations, energy security, pandemic preparedness and response, and cybersecurity." *Id.*; *see also* ER-161–63.

Plaintiffs focus on the fact sheet's observation that certain unions have "declared war on President Trump's agenda," including a VA union that has filed an excessive number of grievances. Pls.' Opp'n Emergency Mot. Stay Pending Appeal 10 (quoting ER-163). But as the panel correctly observed, this statement is tied to the fact sheet's concern "that the FSLMRS allows unions to 'obstruct agency management,' including by impeding the removal of employees for 'poor performance or misconduct,' which is contrary to the need for 'a responsive and accountable civil service to protect our national security.'" *AFGE*, 148 F.4th at 655 (quoting ER-162–63).

Any suggestion that it was improper for the President to consider excessive grievances when exempting agencies is also incorrect. The FSLMRS explicitly authorizes the President to consider grievances when making exclusion determinations. *See* 5 U.S.C. § 7103(b)(1) (requiring the President to determine that "the provisions of this chapter," which include grievances, *id.* § 7121, are inconsistent with national-security requirements and considerations). And as this Court has consistently held, even "protected speech" can be a "'wholly legitimate consideration'" underlying official action. *Nieves v. Bartlett*, 587 U.S. 391, 401 (2019) (quoting *Reichle v. Howards*, 566 U.S. 658, 668 (2012)); *see also Boquist*, 32 F.4th at 778 (holding that "government officials do not violate a plaintiff's First Amendment rights if they had an objectively legitimate need to implement security measures in response to information conveyed by the plaintiff's speech, and would have implemented the same security measures in the absence of any retaliatory motive"). At bottom, the panel correctly determined that, to the extent that the fact sheet can be considered and attributed to the President's motives, it underscores the President's focus on national security as Congress intended.

With respect to plaintiffs' reliance "on the Order's broad scope and allegedly 'jagged line drawing' to demonstrate animus," the panel correctly "question[ed] whether [it] can take up such arguments, which invite [the court] to assess whether the President's stated reasons for exercising national security authority—clearly conferred to him by statute—were pretextual." *AFGE*, 148 F.4th at 655. This hesitance is

consistent with the Supreme Court's instruction that judicial review in this area is "highly constrained." *Trump*, 585 U.S. at 704; *see also Reagan*, 870 F.2d at 727 (admonishing a district court that "engrafted" a requirement on President Reagan to "insert written findings into an exempting order"). Regardless, the panel correctly concluded that "even … assum[ing] that the Order's line drawing could constitute some evidence of targeting, on the balance of the record before [the court], the Order reflects that the President would have taken the same action even in the absence of the protected conduct." *AFGE*, 148 F.4th at 655. "The Order itself and the Fact Sheet fairly indicate that the President would have issued the Order, regardless of Plaintiffs' speech, based on the perceived impact of union activities and collective bargaining on the sound operation of agencies and subdivisions with national security-related missions." *Id.*

**B.**      The panel also correctly concluded, consistent with two recent D.C. Circuit decisions which that court has declined to rehear en banc, that the balance of the equities weighs in the government's favor.

On whether the preliminary injunction imposes irreparable harm on the government, the panel appropriately echoed the D.C. Circuit, which "explained in staying an injunction of the same Executive Order, … the government 'suffers irreparable harm'" because the preliminary injunction "'ties the government's hands … in the national security context.'" *AFGE*, 148 F.4th at 655–56 (second alteration in original) (quoting *NTEU v. Trump*, No. 25-5157, 2025 WL 1441563, at *2 (D.C. Cir.

May 16, 2025) (per curiam)); *see also AFSA*, 2025 WL 1742853, at \*3. The panel's conclusion is also consistent with the Supreme Court's recent admonition that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *AFGE*, 148 F.4th at 656 (alteration in original) (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025)).

By contrast, plaintiffs have asserted only speculative or reparable injuries. With respect to plaintiffs' asserted bargaining-rights harm, the panel correctly observed that "any terminated agreements can be reinstated if Plaintiffs ultimately prevail." *AFGE*, 148 F.4th at 656. And "paused administration of dues collection can be addressed by voluntary dues payment in the interim and by monetary damages at the end of litigation" *Id.* The D.C. Circuit reached the same conclusion. *See NTEU*, 2025 WL 1441563, at \*2. And the Federal Labor Relations Authority has shown that it can reinstate agreements or undo any changes to working conditions if the union ultimately prevails. *See, e.g., U.S. Dep't of Com. Pat. & Trademark Off. & Pat. Off. Pro. Ass'n*, 60 F.L.R.A. 869, 882 (2005) (affirming the reinstatement of a collective-bargaining agreement that the agency repudiated).

**II.**     Finally, reasons beyond the correctness of the panel's decision and its consistency with other courts' decisions militate against rehearing.

First, there is another basis upon which the government is likely to prevail on appeal. The government has raised jurisdictional objections that the stay panel did not address "because [it was] not considering an appeal of the preliminary injunction, but

only whether to grant the government's motion for a stay, for which [the court has] jurisdiction 'under the All Writs Act, 28 U.S.C. § 1651." *AFGE*, 148 F.4th at 656 n.2 (quoting *Newsom v. Trump*, 141 F.4th 1032, 1043 (9th Cir. 2025) (per curiam)). Specifically, the district court lacked jurisdiction because the FSLMRS channels adjudication of labor disputes like plaintiffs' to the Federal Labor Relations Authority, followed by direct review in the court of appeals. *See* 5 U.S.C. §§ 7105(a)(2), 7123(a); *see also AFGE v. Trump*, 929 F.3d 748, 755 (D.C. Cir. 2019). This issue is currently before the merits panel; if the merits panel reverses for lack of jurisdiction, rehearing a stay decision on the First Amendment or equitable issues would become unnecessary.

There are also additional reasons why the government is likely to succeed on the retaliation claim that the stay panel did not reach. The district court failed to complete its analysis of plaintiffs' First Amendment claim, entirely ignoring the government's argument on this score. This is a necessary element of the claim, *see Boquist*, 32 F.4th at 778, and the district court's failure to address it is reversible error. *See California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 475 (9th Cir. 2022) (holding that district courts abuse their discretion issuing preliminary injunctions where they "misapprehend[] the law with respect to the underlying issues in the litigation" (quotation omitted)).

Second, were there any doubt that rehearing en banc is unwarranted, such doubt is dispelled by plaintiffs' failure to request rehearing in the weeks after the stay decision. En banc review of an interlocutory stay decision is extremely unusual, and

15

granting such review after the parties have completed briefing the merits upon the Court's *sua sponte* call for view would be even more unusual. Rehearing a stay decision now, with a merits decision forthcoming, could lead to a series of conflicting decisions. The far better approach is to permit this appeal to be resolved in the ordinary, orderly course.

## CONCLUSION

For the foregoing reasons, the Court should decline to review the panel's stay decision en banc.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MELISSA N. PATTERSON
JOSHUA M. KOPPEL
*s/ Benjamin T. Takemoto*

BENJAMIN T. TAKEMOTO
TYLER J. BECKER
*Attorneys*
*Civil Division, Room 7258*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-4252*
*benjamin.takemoto@usdoj.gov*

September 2025

17

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Rule 32 of the Federal Rules of Appellate Procedure 32 and this Court's August 25, 2025, order because it contains 3,786 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Benjamin T. Takemoto*
BENJAMIN T. TAKEMOTO

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.


*s/ Benjamin T. Takemoto*
BENJAMIN T. TAKEMOTO